**In re Michael J. PREMO, Debtor.**

**Bankruptcy No. 87–09410.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

July 3, 1990.

rate plus two or two and one-half percent. *Id.* at 189–90.

David L. Powers, Bay City, Mich., for debtor.

Alexandra E. Nicholaides, Asst. U.S. Atty., Washington, D.C., for the I.R.S.

## MEMORANDUM OPINION ON DEBTOR'S OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE

ARTHUR J. SPECTOR, Bankruptcy Judge.

In this case we are called upon to decide whether Michael J. Premo ("Debtor") bears financial responsibility for the unpaid withholding taxes of two companies in which he was the principal equity owner. The Debtor has objected to the proof of claim filed by the Internal Revenue Service ("IRS" or "Government") for withheld but unpaid personal income and social security taxes due from Tri–Cities Computer Mart, Inc. ("Tri–Cities") and Flint Microcomputers, Inc. Besides the Debtor, three witnesses testified at trial, one of whom was called by the IRS. As the question of which party bore the burden of proof was an issue to be decided after trial, each party tried the case as if it bore the burden. The case was well-tried and the issues were extensively briefed. For the reasons which follow, we sustain the Debtor's objection. The following shall constitute our findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

This is a contested matter, Bankruptcy Rule 9014, and is within the bankruptcy jurisdiction of the federal court, 28 U.S.C.

§ 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## FACTS

The Debtor incorporated and began operating Tri–Cities, a retail computer sales company, in 1978. Between 1978 and 1983, the Debtor served as Tri–Cities' secretary/treasurer and, along with his wife, was responsible for the company's bookkeeping and accounting duties. Following the resignation of the company's co-founder, the Debtor became president of Tri–Cities in January, 1983. The company expanded, with gross sales doubling each year from 1978 to 1985. The Debtor, who had no prior training or experience in finance, hired Philip Brzezinski for the newly created position of chief financial officer in April of 1983. As the CFO, Brzezinski assumed responsibility for all accounting aspects of the company, thereby permitting the Debtor to concentrate on sales. In late 1985 or early 1986, Tri–Cities acquired 90% of the stock of Flint Microcomputers. These two companies operated a total of five stores and, by 1987, employed approximately 100 persons.

In early April, 1987, the Debtor received a default notice from its principal financier, Michigan National Bank ("MNB"), which called in Tri–Cities' debt of some $1.5 million. This was when the Debtor first became aware that the companies were experiencing financial difficulties. MNB, whose loan was secured by, among other things, Tri–Cities' accounts, inventory and proceeds thereof, notified the companies' account debtors on approximately April 10, 1987 that payments were to be made directly to the bank. MNB officials came into Tri–Cities' offices on a daily basis and removed all cash on hand. On or about April 21, 1987, the Debtor retained legal counsel and, on counsel's advice, hired Donald Gillings, a CPA, shortly thereafter to assess the financial status of the corporations. Gillings, counsel and the Debtor then met with MNB officials to negotiate terms of a workout. MNB reviewed the corporate financial statements and expressed concern regarding the accuracy of figures relating to accounts receivable. Brzezinski would not cooperate in efforts to prepare more accurate financial statements. On April 28, 1987, Brzezinski resigned. Subsequent reconstruction of the financial reports by outside accountants indicated that the companies incurred a $900,000 loss in 1986 rather than a $100,000 profit, as originally reported. Financial statements for April and May of 1987, prepared after Brzezinski's departure, indicated that, rather than having a net worth of approximately $1 million as reported in prior financial statements, the companies in fact were showing a $3 million deficit. The Debtor first learned of a delinquency in federal withholding tax payments on April 30, 1987, when he and Gillings came across several delinquency notices from the IRS while looking through Brzezinski's desk.

The Debtor's efforts to revive his corporations were shortlived and unsuccessful; on May 19, 1987, Tri–Cities filed for bankruptcy under Chapter 11, followed on May 29, 1987 by Flint Microcomputers. Shortly thereafter, on June 9, 1987, the Debtor personally filed for relief under Chapter 11. The IRS filed a proof of claim alleging that the Debtor was personally liable pursuant to § 6672 of the Internal Revenue Code (IRC) for $242,877.13 in unpaid income and social security taxes owing from Tri–Cities and Flint Microcomputers.[1] Section 6672 states in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall … be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over. . . .

26 U.S.C. § 6672(a).

The Debtor does not deny that his companies failed to pay withholding taxes for

---

1. These taxes, which must be deducted from employee wages, are held in trust by the employer pursuant to § 7501 of the IRC, and are thus frequently referred to as "trust fund taxes." *Slodov v. United States,* 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251 (1978).

the time periods in question, but he does deny that he was personally responsible for collecting and paying these taxes. The Debtor also denies that he "willfully" failed to pay the trust fund taxes. Each party claims that the other bears the burden of proof in this case, and that issue will be addressed first.

## BURDEN OF PROOF

■ Pursuant to § 502(a) of the Bankruptcy Code and Bankruptcy Rule 3001(f), a properly executed proof of claim constitutes *prima facie* evidence of its correctness. It is a well-settled principle of bankruptcy law that a party objecting to the claim "carries the burden of going forward to meet, overcome, or at least equalize, what operates in favor of the creditor by the force of section 502(a) and the Rule." 3 *Collier on Bankruptcy*, ¶ 502.01[3] (15th ed.1989). The "burden of ultimate persuasion," however, "is always on the claimant." *Id.* The underlying rationale for this rule is that a claimant in a bankruptcy proceeding is in the same posture as a civil plaintiff in a non-bankruptcy proceeding, who generally is assigned the burden of proving its claim against the defendant under non-bankruptcy law. *See In re Lewis*, 80 B.R. 39, 40 (Bankr.E.D.Pa.1987); *In re KDI Corp.*, 2 B.R. 503, 504 (Bankr.S.D. Ohio 1980); 3 *Collier on Bankruptcy, supra.* The problem in this case, however, is that the applicable non-bankruptcy law is tax law, which places the burden of persuasion upon the taxpayer to show that he is

*not* liable for the amount sought by the government. It is this apparent conflict which presents a problem in this case.

As previously stated, the taxpayer generally bears the burden of proof in non-bankruptcy litigation concerning the correctness of taxes assessed by the IRS. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *United States v. Rexach*, 482 F.2d 10 (1st Cir. 1973), *cert. denied* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). Similarly, a person from whom the IRS seeks to recover a penalty under 26 U.S.C. § 6672 must prove that he is not liable for payment of the assessed penalty.[2] *Calderone v. United States*, 799 F.2d 254 (6th Cir.1986); *Sinder v. United States*, 655 F.2d 729 (6th Cir.1981); *Psaty v. United States*, 442 F.2d 1154 (3d Cir.1971). This general rule of procedure appears to be derived primarily from case law; no statute or regulation categorically assigns the burden of proof to the taxpayer in litigating disputes with the IRS.[3]

In this case, the IRS never assessed the Debtor for the unpaid taxes, presumably because it had not completed its investigation of the taxpaying companies when the Debtor's bankruptcy was filed. The Government vehemently argued that its failure to assess is of no importance. Because the Debtor has taken no position on this issue, we have no occasion to decide the question.[4]

**2.** Although liability under § 6672 is characterized as a "penalty," the provision is essentially an "alternative collection source for trust fund taxes." *United States v. Energy Resources Co., Inc.*, — U.S. —, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). Section 6671 of the IRC states that penalties such as that imposed under § 6672 "shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter." 26 U.S.C. § 6671. For purposes of analysis, then, a "penalty payer" under § 6672 is essentially equivalent to a "taxpayer," and the latter term may be used hereafter in reference to persons held liable under § 6672.

**3.** Pursuant to § 7422(e) of the IRC, however, a person who has filed suit against the IRS to

recover tax or penalty payments bears the burden of proof as to issues (other than fraud) raised by any counterclaim made by the IRS for an asserted deficiency relating to the tax or penalty in question. 26 U.S.C. § 7422(e). *See also* Rule 142(a), Tax Court Rules of Practice and Procedure, 26 U.S.C.A. foll. § 7453.

**4.** We note, without adopting their views, that several courts have apparently disagreed with the Government's position. *See In re Unimet Corp.*, 74 B.R. 156, 165–66 (Bankr.N.D.Ohio 1987); *United States v. Kontaratos*, 35 B.R. 135, 139 (Bankr.D.Me.1983), *aff'd* 36 B.R. 928 (D.Me. 1984); *In re Coleman American Companies, Inc.*, 26 B.R. 825, 830–31, 10 B.C.D. 185 (Bankr.D. Kan.1983); *In re Twomey*, 24 B.R. 799, 804 (Bankr.W.D.N.Y.1982).

Many cases hold that the IRS bears the burden of proving its tax claim in bankruptcy without regard to whether the tax in question was assessed pre-petition. The earliest case located in which the burden of proof was assigned to the IRS under such circumstances is *In re Gorgeous Blouse Co., Inc.*, 106 F.Supp. 465 (S.D.N.Y.1952), where the court stated:

> There is no doubt that the burden of establishing the claim rests upon the Government. The filing of a sworn proof of claim is sufficient to establish a prima facie case. It "compels the objector to go forward and produce evidence enough to rebut the claimant's *prima facie* case. [O]nce this is achieved, it is for the claimant to prove his claim, not for the objector to disprove it." These principles are applicable to tax claims asserted by the Government.

*Id.* at 465 (citations omitted).

*Gorgeous Blouse* cited *Collier on Bankruptcy* as authority for the proposition that the bankruptcy rule assigning the burden of proof to the claimant applies with equal force when the claimant is a taxing authority.[5] The 14th edition of *Collier* states that "[a]s in the case of other types of claims, a filed proof of a tax claim in proper form establishes a *prima facie* case for the allowance of the claim [citation omitted]. *The burden of proof is on the claimant,* but the burden of going forward and introducing evidence to rebut the *prima facie* case is on the objecting party [citing *In re Bradley*, 16 F.2d 301 (S.D.N.Y.1926)]."

3A *Collier on Bankruptcy*, ¶ 64.409 (14th ed.1988) (emphasis added).[6]

The authority cited in *Collier* is not persuasive,[7] and *Gorgeous Blouse* offers no rationale to justify its holding. Nevertheless, many cases decided subsequent to *Gorgeous Blouse* have reached the same conclusion, often citing *Gorgeous Blouse* or cases which in turn relied upon *Gorgeous Blouse.*[8] *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988); *In re Seafarer Fiber Glass Yachts, Inc.*, 475 F.Supp. 1097 (E.D.N.Y.1979); *Watson v. Thompson*, 456 F.Supp. 432, 435 (S.D. Ga.1978); *In re Avien*, 390 F.Supp. 1335, 1342 (E.D.N.Y.1975), *aff'd*, 532 F.2d 273 (2d Cir.1976); *In re Slodov*, 75–2 USTC ¶ 9829 (N.D.Ohio 1975), *aff'g in part* 74–2 USTC ¶ 9719 (Bankr.N.D.Ohio 1974), *rev'd on other grounds*, 552 F.2d 159 (6th Cir.1977), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *In re Brady*, 110 B.R. 16, 18 (Bankr.D.Nev.1990); *In re Gran*, 108 B.R. 668, 674 (Bankr.E.D. Ark.1989); *In re Derickson*, 104 B.R. 346, 349 (Bankr.D.Or.1989); *In re Butcher*, 100 B.R. 363, 367 (Bankr.E.D.Tenn.1989); *In re Hudson Oil Co., Inc.*, 91 B.R. 932, 945 (Bankr.D.Kan.1988); *In re Brickell Inv. Corp.*, 85 B.R. 164, 167 (Bankr.S.D.Fla. 1988); *In re Summa T Corp., Int'l.*, 73 B.R. 388, 394 (Bankr.E.D.Ark.1987); *In re Koontz Aviation, Inc.*, 71 B.R. 608, 610 (Bankr.D.Kan.1987); *In re Brahm*, 52 B.R. 606, 608 (Bankr.M.D.Fla.1985); *In re Ashline*, 37 B.R. 136, 139 (Bankr.N.D.N.Y. 1984); *In re L.G.J. Restaurant, Inc.*, 27

---

**5.** *Gorgeous Blouse* also cited *In re Clayton Magazines*, 77 F.2d 852 (2d Cir.1935) for the same proposition. That case, however, is not on point; nowhere in *Clayton* did the court indicate that the government bore the burden of proving its claim against the bankrupt.

**6.** No statement to this effect could be located in the 15th edition of *Collier*.

**7.** *Bradley* involved a proof of tax claim filed against the bankrupt by the City of New York. In addressing the evidentiary weight of the claim, the court stated that "[t]he filing of the sworn proofs of claim by the city amounted to prima facie cases, and no additional proof was required to be produced, unless some evidence contradicting it was produced by the objector. While the burden of proving a claim rests on the claimant, the claimant had made out a pri-

ma facie case when it filed the verified proof of claim...." 16 F.2d at 302 (citation omitted). The case cited in *Bradley*, however, concerned a claim filed by a non-governmental entity, and *Bradley* did not discuss whether tax claims should be treated differently from other types of claims with respect to allocation of the burden of proof. It is therefore weak authority for the contention that the Government must prove the validity of its tax claim against a debtor just like any other claimant.

**8.** Of the cited cases, all involved the IRS as the tax claimant except *Fidelity Holding* (State of California), *Avien* (City of New York), *Koontz* (State of Missouri), *Seafarer* (State of New York), and *LGJ Restaurant* (State of New York).

B.R. 455; 459 (Bankr.E.D.N.Y.1983); *In re Motor Freight Express*, No. 82–04944S, 1988 WL 47601 (Bankr.E.D.Pa.1988) (LEXIS 2608).[9]

In another pre-Code case, the Sixth Circuit held that the State of Ohio bore the burden of proving that the bankrupt owed it unpaid payroll premiums. *In re Highway Const. Co. of Ohio*, 105 F.2d 863 (6th Cir.1939). The court concluded that the proof of claim filed by the state "is prima facie proof. But prima facie proof is rebuttable. [The bankrupt] introduced evidence tending to rebut [the State's] claim, and it was therefore incumbent upon [the State] to introduce evidence to establish its claim [citing *Alexander v. Theleman*, 69 F.2d 610 (10th Cir.1934)]." *Id.* at 806 (citation omitted). Although *Highway Construction* differs from this case inasmuch as the claimant was a state, rather than the IRS, the rationale motivating the "IRS rule," which we shall discuss, would appear to be equally applicable to other taxing entities. Moreover, the general rules described in *Highway Construction* regarding the evidentiary effect of claims filed against a debtor remain unchanged today under the Code. *See* Bankruptcy Rule 3001(f); *In re Wells*, 51 B.R. 563, 566 (D.Colo.1985). The conclusion reached by the Sixth Circuit is therefore relevant to the present dispute.[10]

While a great number of cases have held that taxing authorities must bear the burden of proving their claim against the debtor just like any other claimant, there are many cases which have held to the contrary. *Resyn Corp. v. United States*, 851 F.2d 660, 662–63 (3d Cir.1988); *In re Uneco*, 532 F.2d 1204 (8th Cir.1976); *Paschal v. Blieden*, 127 F.2d 398 (8th Cir.1942); *In re Terrell*, 75 B.R. 291, 295 (N.D.Ala.1987), *rev'g*, 65 B.R. 365 (Bankr.N.D.Ala.1986), *aff'd*, 835 F.2d 1439 (11th Cir.1987); *Williams v. United States (In re Williams)*, Case No. 88–13596S, Adv. No. 89–09565, 1990 WL 10347 (Bankr.E.D.Pa. 1990) (LEXIS 358); *United States v. Mikle (In re Mikle)*, Case No. BK–S–81–1279, Adv. No. 87–0134, 1990 WL 54776 (Bankr. D.Nev.1990) (LEXIS 397); *In re Horton*, 95 B.R. 436, 440 (Bankr.N.D.Tex.1989); *In re Neeseman*, No. 83–05396, 1989 WL 200421 (Bankr.N.D.Ga.1989) (LEXIS 2383); *In re Byers*, No. 87–B–07112M, 1989 WL 101274 (Bankr.D.Colo.1989) (LEXIS 1674); *In re Fry*, 91 B.R. 69, 70 (Bankr.E.D.Mo.1988); *In re Green*, 89 B.R. 466, 474 (Bankr.E.D. Pa.1988); [11] *In re Quattrone Accountants, Inc.*, 88 B.R. 713, 718, 17 B.C.D. 1343 (Bankr.W.D.Pa.1988), *aff'd*, 100 B.R. 235 (W.D.Pa.1989), *aff'd*, 895 F.2d 921 (3d Cir. 1990); *In re Duque*, 82 B.R. 610, 612 (Bankr.S.D.Fla.1988); *In re Weinberg*, 76 B.R. 215, 217 (Bankr.S.D.Fla.1987); *In re Fogelberg*, 79 B.R. 368, 372 (Bankr.N.D.Ill. 1986); *In re Stroupe*, 69 B.R. 240, 244 (Bankr.M.D.Fla.1986); [12] *In re Allen*, 67 B.R. 46, 47, 14 B.C.D. 1349 (Bankr.W.D.N. Y.1986); *In re Lester*, 51 B.R. 289, 290 (Bankr.M.D.Fla.1985); *In re Bradford*, 35 B.R. 166, 169–70 (Bankr.W.D.Va.1983); *In re Summers*, 32 B.R. 861, 866 (Bankr.N.D. Ohio 1983).[13]

**9.** *Fidelity Holding* cited *LGJ Restaurant* in support of its conclusion, and *LGJ Restaurant* in turn relied upon *In re Cavanaugh Communities Corp.*, 3 B.C.D. 967 (Bankr.S.D.N.Y.1977). However, the claimant in *Cavanaugh* was a private party, not a governmental entity. The "pedigree" of these cases is therefore somewhat tainted, particularly since many cases cited *Fidelity Holding* or *LGJ Restaurant* as authority.

**10.** The persuasive force of *Highway Construction* is limited, however, as the court was apparently not presented with the argument that different rules regarding the burden of proof should apply to tax claims. Moreover, the claimant in *Alexander*, which *Highway Construction* cited, was not a taxing authority.

**11.** In *Green*, Judge Scholl in effect reversed his decision as to the burden of proof in *Motor*

*Freight Express, supra*, apparently in response to the Third Circuit's decision in *Resyn*.

**12.** Judge Paskay's decision in *Stroupe*, which related to an IRS claim for unpaid income taxes, appears to contradict his earlier holding in *In re Brahm*, 52 B.R. 606 (Bankr.M.D.Fla.1985), which involved penalty assessments under 26 U.S.C. § 6672.

**13.** An "intermediate" position was taken in *In re Hanshaw*, 94 B.R. 753 (Bankr.M.D.Fla.1988). Citing the decision of its court of appeals in *Thibodeau v. United States*, 828 F.2d 1499 (11th Cir.1987), the bankruptcy court placed the burden on the IRS to establish that the debtor was a "responsible person" under § 6672 of the IRC. 94 B.R. at 756–57. If that burden was met by the government, the debtor would bear the bur-

In *Resyn*, the debtor corporation appealed a judgment against it for income tax deficiencies owed to the IRS. The Third Circuit described the relative burdens of the parties as follows:

> The government's deficiency assessment ordinarily is afforded a presumption of correctness, thus placing the burden of producing evidence to rebut that presumption squarely on the taxpayer. Resyn first argues that the method of computation adopted by the I.R.S. in determining Resyn's tax deficiencies was arbitrary and clearly erroneous. The burden of proving that an assessment is arbitrary and excessive rests on the taxpayer; if the taxpayer cannot prove that the assessment was arbitrary, it retains the burden of overcoming the presumption in favor of the government that the assessment was not erroneous.

851 F.2d at 662–63 (citations omitted). However, the cases cited in *Resyn* were not bankruptcy proceedings, and the Third Circuit never addressed the tension between these cases and the longstanding bankruptcy policy of assigning the ultimate burden of proof to the claimant.

Most of the other decisions cited above also relied on non-bankruptcy cases in concluding that a debtor must bear the burden of proof in disputes over tax liability, or else cited bankruptcy cases which in turn relied upon non-bankruptcy decisions. The cases so holding did not even mention the general bankruptcy rule regarding allocation of the burden of proof. Thus, the bankruptcy cases which follow the tax-litigation practice of allocating the burden of proof to the taxpayer offer little or no reasoning to justify this result.

The Court of Appeals for this circuit gave some guidance as to how to allocate the burden of proof when that question is undecided:

> Burden of proof allocations are governed by principles of fairness, common sense, and logic. A guiding principle is to assign the burden to the *"party who presumably has peculiar means of knowledge* enabling him to prove its falsity if it false."* See 9 J. Wigmore, *Evidence in Trials at Common Law* § 2486 at 290 (rev. 1981) (emphasis in original). Another consideration is to allocate the burden of proof to the party to whose case the fact is essential.

*First Nat. Bank v. Hurricane Elkhorn Coal Corp.*, 763 F.2d 188, 190 (6th Cir. 1985). This advice does little for us in this case, however. Fairness, common sense and logic do not unequivocally point to either party. Although the Debtor would appear to have "peculiar means of knowledge" regarding the role he played in the financial affairs of his taxpayer companies, the objective facts on this point are available to both parties through documents and witnesses.

It is likewise as to the question of whether the Debtor willfully failed to pay the trust fund taxes. While willfulness would seem to present a subjective question of fact peculiarly within the knowledge of the Debtor, it may nonetheless be established based upon evidence to which both parties have access. *See Calderone*, 799 F.2d at 260 (summary judgment in favor of taxpayer reversed based in part on testimony by witnesses indicating that taxpayer had knowledge of the tax delinquency); *Braden v. United States*, 442 F.2d 342, 344 (6th Cir.), *cert. denied*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971) (willfulness

---

den of proving that he lacked "willfulness," a second element required by the statute. *Id.* at 757. *Thibodeau* cited *Mazo v. United States*, 591 F.2d 1151, 1155 (5th Cir.), *cert. denied sub nom. Lattimore v. United States*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), for the proposition that "[o]nce it is established that a taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer." 828 F.2d at 1505. *Mazo* did indeed so state, and the quoted language seems to imply that the Government carries the burden of proving that

the taxpayer is a "responsible person." However, *Mazo* relied on *Anderson v. United States*, 561 F.2d 162 (8th Cir.1977) and *Liddon v. United States*, 448 F.2d 509 (5th Cir.1971) *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972), each of which clearly held that the taxpayer bears the burden of proof as to both elements. *See Anderson*, 561 F.2d at 165; *Liddon*, 448 F.2d at 513–14. The conclusion in *Hanshaw* therefore stems from a misreading of the decisions in *Anderson* and *Liddon*.

established through testimony of witnesses); *I.R.S. v. Blais*, 612 F.Supp. 700, 708 (D.Mass.1985) (stating that, although willfulness is subjective in nature, "the factfinder may find from circumstantial evidence that the state of mind of knowledge of the relevant facts existed"). Therefore, the Debtor's subjective intent would hardly be conclusive of the issue.

The last consideration cited in *Hurricane Elkhorn Coal* is circular in the context of this case, as the underlying facts are essential to whichever side bears the burden of proof on the issues in question. Therefore, we are relegated to an examination of the underlying rationale for the competing general rules applicable to tax litigation and bankruptcy claims litigation in order to make a determination as to which rule should control in this case.

As justification for assigning the burden of proof to the taxpayer in non-bankruptcy litigation, the court in *Rexach* cited five factors which are relevant for present purposes:

> ■ the normal evidentiary rule imposing proof obligations on the moving party; [2] the relevant prior Supreme Court precedents indicative, if not determinative of the issue, *Wickwire v. Reinecke*, 275 U.S. 101, 105, 48 S.Ct. 43, 44–45, 72 L.Ed. 184 ... (1927); *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 ... (1933); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 ... (1935); *Bull v. United States*, 295 U.S. 247, 260, 55 S.Ct. 695, 699–700, 79 L.Ed. 1421 ... (1935); [3] the presumption of administrative regularity; [4] the likelihood that the taxpayer will have access to the relevant information; and [5] the desirability of bolstering the record-keeping requirements of the [Internal Revenue] Code.

482 F.2d at 16. The court then concluded that the taxpayer must bear the burden of proof even when it is the government which is the moving party, reasoning that to rule otherwise "would encourage taxpayer delay and inaction, thereby imposing on the government the costs and burdens both of borrowing money to meet the gap of unpaid taxes and of initiating litigation." *Id.* at 17.

The Supreme Court cases cited in *Rexach* offer no policy arguments other than the traditional allocation of the burden of proof to the plaintiff. Thus, the first two factors enumerated above are somewhat redundant. Moreover, because a party filing a claim in bankruptcy against the debtor is in effect the moving party, these two factors actually militate toward requiring the IRS to prove the validity of its tax claim.

The "presumption of administrative regularity" to which *Rexach* refers has been described as a presumption that, in the absence of evidence to the contrary, "whatever is required to give validity to the official's act in fact exists." *Borg Warner Corp. v. CIR*, 660 F.2d 324, 330 (7th Cir. 1981) (footnote omitted). Although this presumption is well-established and does indeed operate in favor of the IRS, its significance should not be exaggerated.[14] The Supreme Court stated that the presumption

> does not supply proof of a substantive fact. Best, in his Treatise on Ev., § 300, says: "The true principle intended to be asserted by the [presumption] seems to be, that there is a general disposition in courts of justice to uphold judicial and other acts rather than to render them inoperative...." Nowhere is the presumption held to be a substitute for proof of an independent and material fact.

*United States v. Ross*, 92 U.S. 281, 284–85, 23 L.Ed. 707 (1875). The effect of the presumption should accordingly be limited to establishing the IRS' proof of claim as *prima facie* evidence of its validity. *See United States v. Rindskopf*, 105 U.S. 418, 422, 26 L.Ed. 1131 (1881); *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1440, 465 L.Ed.2d 761 (1984). The pre-

---

**14.** We are inclined to agree with the 7th Circuit's suggestion that the presumption of administrative regularity is itself "a thin reed on which to rest tax liability." *Zeeman v. United States*, 395 F.2d 861, 866 (7th Cir.1968).

sumption of administrative regularity has already been factored into the equation, however, as Bankruptcy Rule 3001(f) assigns *prima facie* status to properly filed claims against the debtor. Therefore, the presumption adds nothing in this case.

Turning to the fourth factor cited in *Rexach*, it may be true that the taxpayer is generally more likely to have access to relevant information. It must be noted, however, that in bankruptcy an objection to a claim may be made by any party in interest, not just the debtor or debtor in possession. 11 U.S.C. § 502(a). There is usually no reason to presume that another creditor, or even a bankruptcy trustee, has greater access to the debtor's documents than does the IRS. As the court noted in *Brady*, "the estate is a party in interest and not just the taxpayer." 110 B.R. at 18. The court's generalization in *Rexach* therefore breaks down to some extent in the context of bankruptcy, where many parties are involved in addition to the IRS and the taxpayer.[15]

Another factor cited in *Rexach* is "the desirability of bolstering the record-keeping requirements" of the IRS. This is a worthwhile objective, but there are already significant incentives for the taxpayer to comply with these record-keeping requirements.[16] It seems unlikely that a bankruptcy exception to the general rule allocating the burden of proof to the taxpayer

would result in a significant decrease in compliance with record-keeping requirements, particularly since inadequate record-keeping constitutes a basis for denying a discharge in bankruptcy. 11 U.S.C. § 727(a)(3).

Finally, the concern expressed in *Rexach* about encouraging taxpayer "delay and inaction" is a legitimate one. However, we do not believe that a taxpayer is likely to view bankruptcy as an appealing means of avoiding imposition of the burden of proof. On balance, then, the policy considerations cited in *Rexach* do not appear to be especially compelling.

As previously noted, the practice in bankruptcy of requiring the claimant to prove his claim is in essence an application of the general rule allocating the burden of proof to the moving party. Those cases which have invoked this rule even when the claimant is a taxing authority have done so on the basis that (1) the Code lacks any provision which distinguishes government claims from claims of private entities, *Fidelity Holding*, 837 F.2d at 698, and (2) the IRS should be "treated like any other claimant under the Bankruptcy Code because the estate is a party in interest and not just the taxpayer," *Brady*, 110 B.R. at 18. We also note that in other contexts there is a tendency on the part of the courts to treat the Government like any other creditor in bankruptcy where there is

---

**15.** Moreover, a leading treatise argues that the significance of "access to records" is overstated:

A doctrine often repeated by the courts is that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue.... This consideration should not be overemphasized. Very often one must plead and prove matters as to which his adversary has superior access to the proof. Nearly all required allegations of the plaintiff in actions for tort or breach of contract relating to the defendant's acts or omissions describe matters peculiarly in the defendant's knowledge. Correspondingly, when the defendant is required to plead contributory negligence, he pleads facts specially known to the plaintiff.

*McCormick on Evidence,* § 337, at 950 (3d ed. 1984). Where, as in this case, the issue of liability is to be resolved primarily by testimonial evidence, the question of access to records becomes even less significant.

**16.** Section 6001 of the IRC imposes an obligation on the taxpayer to "keep such records ... and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever, in the judgment of the Secretary it is necessary, he may require any person ... to ... keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title." 26 U.S.C. § 6001. The IRC also provides that "[i]f no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method, as, in the opinion of the Secretary, does clearly reflect income." 26 U.S.C. § 446(b). Moreover, failure on the part of a taxpayer to produce pertinent documentation may subject him to an inference that the documentation would have been unfavorable to his case. *See generally* 29 Am.Jur.2d, Evidence, § 175 *et seq.*

no statutory basis for different treatment. *See, e.g., United States v. Arnold,* 878 F.2d 925, 929 n. 4 (6th Cir.1989). However, these arguments are not so forceful as to independently warrant requiring the IRS to prove the correctness of its tax claim.

To recapitulate, no reported decision to which we were referred, or which we located on our own, satisfactorily explains why either party in this case should bear the burden of proof in the trial of a bankruptcy claim objection. The policy considerations underlying the tax litigation rule (placing the burden on the taxpayer) are not persuasive. Moreover, these policy considerations are not substantially undermined by recognition of an exception when the taxpayer has filed for bankruptcy and the litigation occurs in the context of an objection to the IRS' claim. Finally, such an exception is consistent with the Sixth Circuit's opinion in *Highway Construction,* as well as the decisions rendered by those bankruptcy and district courts located in this circuit which have considered the issue.[17] Allocation of the burden of proof to the IRS may therefore be justifiable in part as a means of promoting uniformity, if only within the Sixth Circuit.[18]

In conclusion, the case law on this issue is almost evenly divided, and marked by little or no attempt to analyze the question in any detail. Nevertheless, a few cases have made valid arguments as to why tax claims should not be treated differently from other kinds of claims against the debtor. Although the policy considerations cited in *Rexach* would also apply to state tax claims, the Sixth Circuit in *Highway Construction* made no distinction between state claims and other types of claims. We therefore decline to recognize an exception to the well-established rule allocating to the creditor the ultimate burden of persuasion in a trial of an objection to a claim.

## LIABILITY

In order to establish liability under § 6672, the IRS must prove that the person from whom recovery is sought was "under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). The "act" specified in § 6672 is "to collect, truthfully account for, and pay over any tax imposed by this title...." 26 U.S.C. § 6672(a). For the sake of brevity, the cases have generally characterized this element as necessitating a finding that the individual is a "responsible person." *Slodov v. United States,* 436 U.S. 238, 245 n. 7, 98 S.Ct. 1778, 1784 n. 7, 56 L.Ed.2d 251 (1978). The IRS must also prove that the Debtor, as a responsible person, "willfully" failed to pay the taxes in question. 26 U.S.C. § 6672(a). The Court is therefore called upon to analyze each of these elements in the context of this case.

### 1. Responsible Person

The Debtor argues that it was Brzezinski who, as CFO, had the duty to file tax returns and to make the appropriate tax payments. He states that this responsibility was assigned to Brzezinski by Tri–Cities' board of directors, as expressly permitted under the corporation's by-laws.[19] The IRS does not dispute the Debtor's contention that Brzezinski was responsible for paying the withholding taxes;[20] it instead points to the fact that Brzezinski reported to the Debtor and that the Debtor had ultimate authority to control the corporation's finan-

---

**17.** The decisions in *Unimet* and *Slodov* (both from Ohio) and *Butcher* (from Tennessee) are the only such cases located within the Sixth Circuit.

**18.** *Compare Burnett v. Coronado Oil & Gas Co.,* 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting) ("[I]n most matters it is more important that the applicable rule of law be settled than that it be settled right.")

**19.** The by-laws provide in Article V, Section 2 that "[t]he Board of Directors may ... appoint such other officers ... as they may deem neces-

sary for the transaction of the business of the Corporation. All officers and agents shall respectively have such authority and perform such duties in the management of the property and affairs of the Corporation as may be designated by the Board of Directors."

**20.** As the IRS correctly points out, the fact that Brzezinski may be a responsible person does not preclude the possibility that other persons were responsible as well. *Gephart v. United States,* 818 F.2d 469, 473 (6th Cir.1987).

cial affairs. It argues that this authority, even if unexercised, is itself sufficient to conclude that the Debtor is a responsible person. We must therefore determine whether the ultimate authority to control corporate tax payments is equivalent, for purposes of § 6672, to having a "duty" to make such payments. 26 U.S.C. § 6671(b).

As with any matter involving statutory interpretation, resolution of this issue should begin with consideration of the language of the statute. As previously noted, § 6671 speaks of a "duty" to perform the act in question. The term "duty" is defined as "obligatory tasks, conduct, service, or functions that arise from one's position." *Webster's Ninth New Collegiate Dictionary* (1985) [hereinafter *Webster's* ]. Use of the adjective "obligatory" in this definition is consistent with the reference in § 6672(a) to the person "required" to collect and pay the withholding taxes. The word "authority", on the other hand, is defined as the "power to influence or command thought, opinion, or behavior." *Id.*

These definitions suggest that the terms "duty" and "authority" are not synonymous. The notion of a duty implies an affirmative obligation to perform specific acts, whereas "authority" is by its nature discretionary. A high-level corporate officer, for example, may have the authority to "command" that any number of actions be taken, but that does not mean that he or she is obliged or required to do so. To equate authority (or power or the right to exercise control) with duty, as the IRS would have us do, would expand the scope of §§ 6671 and 6672 in a manner which appears unwarranted by the language of these provisions. *Cf. Wiggins v. United States*, 188 F.Supp. 374, 376 (E.D.Tenn. 1960) ("The statute is directed at the person charged with the duty of collecting and paying the taxes and not simply one who may have authority to do so."); *Sherwood v. United States*, 246 F.Supp. 502, 508 (E.D.N.Y.1965) ("Congress could have charged each principal officer of the corporation with personal responsibility for will-

ful failure to pay withholding taxes.... Certainly, enforcement would have been much simpler and easier. But Congress did not so enact. Instead, the statute predicates liability upon any person as officer, employee, or member who is under a *duty* to make such payment and willfully fails to do so.") (emphasis added). The statute therefore does not appear to support the IRS' argument.

The IRS places a great deal of emphasis in its brief on the 7th Circuit's decision in *Monday v. United States*, 421 F.2d 1210 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Ironically, this case undermines the government's contention that the unexercised authority to direct corporate tax payments is tantamount to a duty to make tax payments under § 6672. In *Monday*, the court observed that:

> Corporate office does not, *per se*, impose the duty to collect, account for and pay over the withheld taxes.... Liability attaches to those with power *and responsibility* within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. This duty is generally found in high corporate officials charged with general control over corporate business affairs who *participate* in decisions concerning payment of creditors and disbursal of funds.

421 F.2d at 1214–15 (emphasis added; citations omitted). The Seventh Circuit's statement to the effect that the holding of any particular corporate office does not necessarily impose responsible person status implies that authority alone is not enough. The court's "power and responsibility" formulation also appears to run contrary to the IRS' contention that an individual can be held to be a responsible person simply because he was in a position to exercise control. The word "power" is roughly synonymous with the word "authority." [21] An individual is "responsible" if he is "liable to be called to account as the primary cause,

21. Power is defined as the "possession of control, authority or influence over others." *Web-ster's.*

motive or agent." *Webster's*. *Monday* does not attempt to specify what factors are relevant in determining whether an individual would be accountable, and thus have "responsibility," for the failure to pay withholding taxes. Given the court's reference to power *and* responsibility, however, it seems fair to conclude that power (or authority) alone does not mandate a finding of accountability. This conclusion is reinforced by the reference to corporate officials who actually "participate in decisions" regarding corporate disbursements. 421 F.2d at 1215.

The IRS cites numerous decisions in support of its contention that individuals with unexercised authority to control corporate payments are necessarily responsible persons. Many of these cases, however, involved an individual who not only possessed such authority, but actually exercised it. In *Builders Finance Co., Inc. v. United States*, 352 F.Supp. 491 (E.D.Mich. 1970), the court held that the individual in question was liable under § 6672 "since he had and exercised control over all [corporate] disbursements ... and ... disbursed funds to other creditors." *Id.* at 495. The court in *Reph v. United States*, 615 F.Supp. 1236 (N.D. Ohio 1985) found that Reph was a responsible person, expressly basing its conclusion in part on the fact that, "[a]s part of the management team, [Reph] reviewed the bills of the corporation and made decisions as to payment to creditors." *Id.* at 1243. In *Sherman v. United States*, 490 F.Supp. 747 (E.D.Mich.1980), the court noted that each of the two persons allegedly responsible for failure to make withholding tax payments had participated in decisions concerning the payment of corporate creditors. *Id.* at 753.

Any statements in the foregoing cases which support the IRS' position are therefore *dictum*, and unpersuasive *dictum* at that. In each case, the court evidently believed that the individual's active participation in payment decisions was significant enough to warrant mention in the opinion. Moreover, none of these cases categorically state the proposition advanced by the IRS, let alone offer a rationale for the interpretation which the Government advocates.

Other cases cited by the IRS actually appear to contradict the proposition it advances. In *Sinder v. United States, supra*, the Court of Appeals affirmed the district court's ruling that Sinder was not a responsible person during the last quarter of 1971 because he "did not *exercise* any control over [the corporation's] business" during that time period. 655 F.2d at 731 (emphasis added). In *Gephart v. United States*, 818 F.2d 469 (6th Cir.1987), the court made much of the fact that the alleged responsible person

> [t]estified that he had the authority to initially determine which creditors would be paid in that he "reviewed the accounts payable and worked with Cheryl [Goebel] to determine which checks needed to be paid, and then I turned the checks over to Mr. Bosset for ... his approval to mail." Although plaintiff points to the testimony of Cheryl Goebel to bolster his argument that Bosset really exercised "final" authority, she also testified that plaintiff made the initial decisions as to which checks would be drawn.

*Id.* at 474. The court stated that "the test for determining responsibility of a person under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the person *exercised* over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Id.* (emphasis added). In *Taubman v. United States*, 499 F.Supp. 1133 (E.D.Mich. 1978), *aff'd sub nom. United States v. Intercontinental Industries, Inc.*, 635 F.2d 1215 (1980), the court quoted with approval the same language from *Monday* which, as previously noted, appears to undermine the IRS' position. *Id.* at 1137–38. As in *Gephart*, the court in *Taubman* described the test for responsibility under § 6672 as "a functional one, which focuses upon the degree of control and influence which the officer *exercised* over the financial affairs of the corporation and, more specifically, over the disbursement of funds and priority of payments to creditors." *Id.* at 1137 (emphasis added).

The case which most directly supports the IRS' position is *United States v. Sweetser*, 40 A.F.T.R.2d 5152 (M.D.Pa.1977), which appears to have involved facts similar to this case. Sweetser was a 50% shareholder in the taxpaying corporation and, as its secretary-treasurer, had authority to sign corporate checks. He argued that responsibility for the corporation's financial affairs had been entrusted to the corporation's president and other 50% shareholder. The court rejected this argument, stating:

> The delegation of this duty to Mr. Herring is insufficient to relieve defendant of liability. The fact that defendant had the right to exercise control over the financial affairs of the corporation makes him a responsible person within the meaning of the statute regardless of whether he actually exercised daily control over such aspects of the business. *Harrington v. United States*, 504 F.2d 1306 (1st Cir.1974); *Turner v. United States*, 423 F.2d 448 (9th Cir.1970); *Datlof v. United States*, 252 F.Supp. 11 (E.D.Pa.1966), *aff'd*, 370 F.2d 655 (3d Cir. 1966) [*cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967)].

The cases cited in *Sweetser* do not support its conclusion. In *Harrington* (which the IRS also cites in its brief), the First Circuit stated that there was

> no error in the [lower] court's charge that an individual need not be in day-to-day control of the administrative and financial aspects of the business in order to be the responsible person within the meaning of § 6672, so long as he has the right to control such aspects of the business. This was a correct statement of the law. *See Monday, [supra]; Hewitt v. United States*, 377 F.2d 921 (5th Cir. 1967).

504 F.2d at 1315.

*Harrington*'s reliance on *Monday* and *Hewitt* is misguided. As previously stated, *Monday* actually suggests that authority must be coupled with responsibility; neither *Monday* nor *Hewitt* contains a statement which could fairly be construed as supporting *Harrington*'s conclusion that

"power" is all that is needed. It is also worth noting that both *Monday* and *Hewitt* appear to have involved persons who did in fact exercise control over their respective companies. *See Monday*, 421 F.2d at 1215; *Hewitt*, 377 F.2d at 924. The persuasiveness of *Harrington* is further undermined by the fact that the court seemingly contradicted itself, stating at another point in its opinion that liability under § 6672 extends to those persons with "responsibility *and* authority" to avoid the default in trust fund tax payments. 504 F.2d at 1312 (emphasis added).

Just as *Monday* appears to contradict the proposition for which it is cited in *Harrington*, the Ninth Circuit's decision in *Turner* undermines *Sweetser*'s contention that an individual with authority to direct payments to the IRS is, without more, a responsible person. In *Turner*, the court stated:

> Section 6672 includes "all those so connected with a corporation as to be responsible for the performance of the act in respect to which the violation occurred"; it reaches those who have " 'the final word as to what bills should or should not be paid and when.' " [quoting *Pacific Nat. Ins. Co. v. United States*, 422 F.2d 26, 31 (9th Cir.), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970), and citing *United States v. Graham*, 309 F.2d 210 (9th Cir.1962)] In this context "final" means significant, rather than exclusive control. Section 6672 "was designed to cut through the shield of organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax. It would frustrate this purpose needlessly to imply a condition limiting the application of the section to those nominally charged with controlling disbursements of a corporate employer, thus immunizing those who, through agreement with or default of those nominally responsible, have *exercised* this corporate function in fact." [quoting *Pacific National*]

423 F.2d at 449 (emphasis added). *Turner* thus suggests that the question of who has the "final word" is designed to identify the

person who *actually* "calls the shots," and not necessarily the person who has the right to intervene and make final determinations regarding matters normally entrusted to others.[22] *Turner*'s citation of *Graham* lends further support for this inference, as the Ninth Circuit in that case remanded the case because the district court did not "come to grips with the essential question: whether the board controlled the payment of the corporation's tax debt or whether this power had by the board been delegated to some officer of the corporation." 309 F.2d at 212.

*Sweetser*'s reliance on *Datlof* is also misplaced. There is no statement in that case to the effect that the mere authority to direct disbursements justifies a finding that an individual is a responsible person. Moreover, the plaintiff in *Datlof* clearly exercised his authority on a day-to-day basis; he alone signed many checks made payable to creditors other than the IRS while withholding taxes were delinquent, 252 F.Supp. at 23, and the court explicitly based its finding of responsibility in part on the fact that he "signed all of Donchester's federal, state and city tax returns." *Id.* at 32. As with the other cases cited in *Sweetser*, then, *Datlof* is weak authority for *Sweetser*'s contention that an individual may be a responsible person simply by virtue of the fact that he had the right to make decisions regarding the corporation's financial affairs.

The Government also cites *White v. United States*, 372 F.2d 513, 178 Ct.Cl. 765 (1967) as authority for the proposition that an individual may be held to be a responsible person based simply on the fact that he had the authority to control the corporation's expenditure of funds. The court in *White* observed that

> a responsible person is most frequently defined as a person who has "the final word as to what bills or creditors should or should not be paid and when." To that effect, *see, e.g., United States v.*

*Graham, [supra ]; Bloom v. United States*, 272 F.2d 215 (9th Cir.1959), *cert. denied* 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 ... (1960); *Sherwood v. United States*, 246 F.Supp. 502 (E.D.N.Y.1965); *Neale v. United States*, 13 A.F.T.R.2d 1721 (D.Kan.1964); *Kolberg v. United States*, 13 A.F.T.R.2d 1615 (D.Ariz.1964); *Schweitzer v. United States*, 193 F.Supp. 309 (D.Neb.1961).

372 F.2d at 516–17.

The cases cited in *White* do not support the Government's position. As previously noted, the Ninth Circuit in *Graham* implied that the question of whether the authority to control corporate payments has actually been exercised is critical in determining whether an individual is a responsible person. In *Bloom*, the same court distinguished a case cited by counsel for the alleged responsible person on the grounds that the evidence in the other case "established that the stockholders and directors sought to be charged had wholly delegated such authority to an office manager and *did not participate in any way in the non-payment action.*" 272 F.2d at 223 (emphasis added). The court in *Sherwood* held that the corporation's president and CEO was a responsible person under § 6672, except for that period of time during which, although retaining office, he was incapacitated by illness. 246 F.Supp. at 507. The court reasoned that, as a result of this illness, he was "not in a position to act with respect to the corporation's financial condition or to make any decisions concerning payment to creditors." *Id.* at 508.

The other cases cited in *White* arguably suggest that power alone suffices, but are in any event unpersuasive. The court in *Schweitzer* apparently based its conclusion that the plaintiff was a responsible person on its observation that, as "president, chief executive officer, majority shareholder, and chairman of the Board of Directors" of the taxpaying corporation, he "was a person

---

**22.** It also bears noting that in *Pacific National,* from which *Turner* quoted extensively, the Ninth Circuit stated that liability under § 6672 is limited to those persons "who *exercise* the corporation's power to determine whether or

not to pay the withheld tax." 422 F.2d at 30. (emphasis added). This statement clearly implies that the *right* to exercise such power does not necessarily subject an individual to liability under § 6672.

with authority under the articles of incorporation to determine what bills would and would not be paid and had authority to direct the payment of the taxes in question." 193 F.Supp. at 312. The only authority cited by *Schweitzer* is *Bloom* which, as noted above, implied that the individual in question must actually exercise his authority in order to meet the definition of a responsible person. Although making extensive findings indicating that Kolberg "exercised [his] authority during the period involved in this case," the court in *Kolberg* stated (without citation) that "[a] person may be a responsible officer ... if he has the power to determine what bills should be paid." The court in *Neale* also cited no authority or rationale for its statement that "[a] person may be a responsible person ... if he has the power to determine what bills and creditors should be paid, and which should not." None of these three cases unequivocally states that the power to influence corporate disbursements is sufficient to establish responsibility regardless of whether such power is in fact exercised.

A careful reading of the authority cited in *White* therefore leads to the conclusion that the person with the "final word" is best defined as the individual who ultimately decided which bills were to be paid, rather than the individual who had the unexercised right to decide such matters. This interpretation would be consistent with the decisions in *Turner* and *Pacific National, supra.*

*White* also described *Belcher v. United States,* 6 A.F.T.R.2d 5495 (W.D.Va.1960) as holding that the "delegation of authority by the president of the corporation did not relieve him from" liability for unpaid withholding taxes. 372 F.2d at 518. R.L. Belcher and H.T. Belcher were, respectively, the president and vice-president/treasurer of the taxpaying corporation. However, the court in *Belcher* noted that H.T. was "primarily responsible" for the operation of another corporation and that he "assumed no obligation for making [the

taxpaying corporation's] tax returns or doing any of its bookkeeping." R.L., on the other hand, was "in charge of the [taxpaying corporation's] operation," and was responsible for signing the corporation's tax returns and "checks for payment of the taxes." The court subsequently concluded that R.L. was a responsible person during the relevant time period, but that H.T. was not. Although the court did not elaborate, the logical inference is that the distinction was based on the fact that H.T. was not involved in the company's day-to-day operations. The decision in *Belcher* therefore actually lends support for the conclusion that an alleged responsible person must actively participate in financial decisions relevant to the payment of withholding taxes.[23]

■ For the reasons stated, we find the case law cited by the IRS to be unpersuasive. This is particularly true in light of the fact that so many cases have focused on the extent to which the alleged responsible person actually participated in decisions regarding the payment of corporate debts. If the authority to influence such decisions were deemed sufficient, those cases would have been engaging in a pointless inquiry: the question of whether the individual had actually exercised his authority would be utterly irrelevant. The logical inference to draw from such cases, of course, is that the courts regard the extent to which the individual actually exercised control to be an important consideration. This conclusion seems all the more appropriate given the repeated references in the decisions to the necessity of identifying the individual who had "power and responsibility" to control the disbursal of corporate funds. *See, e.g., Braden,* 442 F.2d at 344; *Slodov v. United States,* 552 F.2d 159, 164 (6th Cir.1977), *rev'd on other grounds,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Sawyer v. United States,* 831 F.2d 755, 758 (7th Cir.1987); *Liddon v. United States,* 448 F.2d 509, 512 (5th Cir.1971). As previously noted, this

---

**23.** It is also worth noting that *White* simply reviewed *Belcher* and other cases which it believed focused on ultimate authority; it did not

find it necessary to decide whether to adopt the reasoning of these cases. 372 F.2d at 519–20.

phrase suggests that power alone does not a responsible person make. We therefore conclude that an individual who had the authority, but not the obligation, to direct tax payments to the IRS is not a responsible person if he did not exercise such authority.[24]

■ The IRS does not allege that the Debtor assumed any responsibility for disbursing funds to the corporations' creditors while Brzezinski was employed by Tri-Cities. The evidence does not establish that the Debtor even conferred with Brzezinski or otherwise participated in decisions regarding which debts were to be paid. The IRS instead relies in essence on the fact that the Debtor could have done these things if he had so chosen. For the reasons discussed above, we believe that this reliance is misplaced, and we accordingly

hold that the Debtor was not a responsible person while Brzezinski remained in office.

Taking a somewhat different tack, the IRS also argues that the Debtor cannot escape liability by delegating his duty to collect and pay taxes to others within the corporation.[25] In support of its "no delegation" theory, the IRS cites *Harrington v. United States, supra; Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979); and *Howard v. United States*, 711 F.2d 729 (5th Cir.1988). Neither *Mazo* nor *Howard* is on point, however,[26] and we again find *Harrington* to be unpersuasive.

In *Harrington*, one of the plaintiffs claimed he was not responsible for payment of a portion of the delinquent taxes because responsibility for the payment of those taxes had been "delegated" to Harrington. 504 F.2d at 1312. The First Circuit did not categorically reject this argu-

24. It could be argued that, even if such an individual does not exercise his authority to control tax payments, he may nevertheless be liable under § 6672 if his failure to act was "willful." *Cf. Neale v. United States*, 13 A.F.T. R.2d 1721 (D.Kan.1964) ("The question is simply whether such person had knowledge that the taxes were not being paid by the corporation and had the final word as to what bills to pay or not to pay and when, and if he had such power or final word, and such knowledge, then he is a responsible person...."). This conclusion might be reconciled with the statutory requirement of a duty to make the tax payments by viewing the individual's authority, when coupled with the requisite level of knowledge relative to the delinquency, as giving rise to a duty to take affirmative steps to insure that the tax payments are made. *Cf. Schweitzer*, 193 F.Supp. at 311–12 ("[T]he plaintiff was put on notice by the filing of the federal tax liens that the corporation was not making timely remittance of [trust fund] taxes, and thereupon it became incumbent upon the plaintiff to exercise his duties as president and chief executive officer ... and actively participate ... to the extent necessary· to cause the payment ... of [trust fund] taxes...."). One problem with this argument is that it obscures the distinction between the "responsible person" and "willfulness" elements, making knowledge of the delinquency relevant to both determinations. *Cf. Mazo*, 591 F.2d at 1156 ("[R]esponsibility is a matter of status, duty and authority, not knowledge."); *Pototzky v. United States*, 56 A.F.T.R.2d 5157 (Ct.Cl.1985) ("[K]nowledge is irrelevant in considering whether [plaintiff] was a 'responsible person' ... [citation omitted]. Plaintiff's knowledge of nonpayment is, at most, relevant to the

issue of willfulness."). On the other hand, such an approach avoids the unjust result of permitting an individual in a position of power to escape liability by simply doing nothing. We have no occasion to resolve this issue, however, as the Court concludes, *infra*, that the Debtor did not acquire knowledge of the delinquency during Brzezinski's tenure, nor did he recklessly disregard information indicating the possibility of a delinquency.

25. Since we have held that the Debtor was not otherwise a responsible person while Brzezinski was acting as CFO, the act of "delegation" to which the IRS presumably refers is the corporate restructuring whereby responsibility for tax payments was vested in the newly created position of CFO. At the time of this restructuring, of course, the corporation was not delinquent in its tax payments. There is no indication, nor does the IRS allege, that the corporation was restructured in an effort to thwart IRS collection efforts.

26. *Mazo* held that the delegation of duty did not constitute a "reasonable cause" for the responsible person's failure to remit taxes. 591 F.2d at 1155. The relevance of the alleged delegation of duty was therefore considered in the context of "willfulness"; the court did not address the question of whether an individual can avoid designation as a responsible person on the grounds that he delegated his responsibility to a subordinate, presumably because counsel chose not to frame the argument in such terms. The plaintiff in *Howard* did not allege that he had delegated his duty under § 6672 to a subordinate. *See* 711 F.2d at 736 n. 6.

ment; it instead stated that "[s]ince the jury could properly have found that Davis was the person with responsibility for the taxes, we find no error in the decision of the court below." 504 F.2d at 1313. *Harrington* did quote approvingly the following passage from *McCarty v. United States*, 437 F.2d 961, 967–68, 194 Ct.Cl. 42 (1971):

> As a general proposition it may be safely postulated that one who is the founder, chief stockholder, president, and member of the board of directors of a corporation ... is rebuttably presumed to be the person responsible under § [6672] of the Code and is thus liable for the penalty, in the absence of an affirmative showing by him that in actual fact he lacked the ultimate authority to withhold and pay the employment taxes in question, or that his omission was not willful in the statutory sense.

504 F.2d at 1313. In offering this quote, however, it is not at all clear whether *Harrington* purported to summarily reject the premise that a controlling stockholder and president can be relieved of the duty to collect and pay taxes by the employer's delegation of that duty to others. In any event, *McCarty* appears to have used the term "ultimate authority" as a synonym for the "final word," a phrase which, as previously discussed, is apparently intended as a reference to individuals who actually made the final decision regarding how funds are to be disbursed.[27]

*McCarty* therefore does not provide support for the proposition that an individual who delegates his duty to pay corporate taxes to a subordinate continues to be a responsible person notwithstanding that he no longer actually exercises authority with respect to the payment of taxes. To the contrary, *McCarty* would appear to stand for the proposition that a duty may be effectively delegated, so long as the delegator does not continue to make the ultimate decision regarding which debts are to be paid. *Accord, Graham, supra; Cushman v. Wood*, 149 F.Supp. 644 (D.Ariz.1956);

*Wiggins, supra.* Indeed, to suggest otherwise would mean in effect that the Debtor, having concededly been a responsible person in the time period preceding Tri–Cities' expansion, would retain responsibility for as long as he remained in a position of authority, even if Tri–Cities had expanded into a publicly held, multi-national conglomerate. We find no support for such a contention, and we therefore reject the IRS' argument that the Debtor remained a responsible person, notwithstanding the corporate restructuring which assigned responsibility for payment of withholding taxes to the CFO.

■ The next issue is whether the Debtor became a responsible person after Brzezinski's departure. Although the Debtor concedes that he assumed Brzezinski's responsibilities upon the latter's resignation, he contends that he was not a responsible person because, shortly after Brzezinski resigned, MNB took control of corporate funds and decided which creditors were to be paid from these funds. The response to this argument depends on how one views the "responsible person" designation. If it is regarded as a function not only of the individual's role within the corporation, but also as dependent upon the nature of the funds in question, then the Debtor's argument is quite plausible. From this perspective, the Debtor is a responsible person, but his "responsibility" extends only to those funds which are available for payment to the IRS. Thus, the Debtor could be said to have been a responsible person vis-a-vis funds released by MNB for the payment of current withholding taxes, but not as to those funds retained by MNB or released for the express purpose of payment to current vendors.

Conversely, the existence of available funds (or any funds, for that matter), may be viewed as irrelevant to the determination of whether a corporate employee is a responsible person: the sole inquiry would be whether the person in question was responsible for collection and payment of

---

**27.** The passage from *White, supra,* regarding the "final word" is quoted with approval in *McCar-* ty; both cases were decided by the same panel of judges.

the withholding taxes. We believe this viewpoint is better supported by the language of the statute, and is also more consistent with those cases that have interpreted the "responsible person" designation.[28] In *Slodov*, for example, the Supreme Court based its holding that Slodov was not liable under § 6672 on the premise that the funds in question were not subject to the trust imposed by 26 U.S.C. § 7501, 436 U.S. at 259, 98 S.Ct. at 1791; it accepted Slodov's concession that he was a responsible person during the period in question. *Id.* at 246, 98 S.Ct. at 1784–85. *See also Howard*, 711 F.2d at 734 (describing responsibility as "a matter of status, duty and authority"). We therefore hold that the Debtor became a responsible person upon Brzezinski's resignation.[29]

2. Willfulness

■ For the reasons stated above, the Court concludes that the Debtor was not a "responsible person" during Brzezinski's tenure. Even if we were to hold otherwise, however, the IRS would also have to prove that the Debtor acted willfully. Nonpayment of taxes is "willful, for § 6672 purposes, if it is voluntary, knowing and intentional even though it is not done with a bad purpose or an evil motive...." *Calderone*, 799 F.2d at 259 (quoting *Barnett v. United States*, 594 F.2d 219, 222 (9th Cir. 1979)). Not surprisingly, most of the controversy in applying this definition or variations thereof has been with respect to the question of what (if anything) the responsible person must "know" in order to have acted willfully. Of course, a responsible person who is aware that withholding taxes are delinquent at the time he makes payments to other creditors of the taxpaying

entity may be subject to liability under § 6672. *See Gephart*, 818 F.2d at 475. It is also clear that knowledge of the delinquency can be established by circumstantial evidence; the factfinder is not bound to accept self-serving statements by the would-be penalty payer as to what he did or did not know regarding the status of tax payments owing to the Government. *IRS v. Blais*, 612 F.Supp. at 708.

■ Many courts, however, have expanded the definition of willfulness to include not only actual knowledge of the delinquency, but also "reckless disregard" as to whether or not a delinquency exists. *Calderone*, 799 F.2d at 260; *Teel v. United States*, 529 F.2d 903, 905 (9th Cir.1976); *Kalb v. United States*, 505 F.2d 506, 511 (2nd Cir.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *Monday*, 421 F.2d at 1215. The rationale behind this conclusion is that to hold otherwise would permit a responsible person to escape liability under § 6672 by "burying his head in the sand." *First American Bank & Trust Co. v. United States*, 79–1 USTC ¶ 9205 (W.D.Okla.1979).

*Calderone* notwithstanding, the Debtor contends that the Sixth Circuit requires actual knowledge of the delinquency in trust fund tax payments, and that "reckless disregard" as to that fact is insufficient. In support of this contention, he cites *Nolan v. United States*, 829 F.2d 1126 (6th Cir.1987) (unpublished). However, the Sixth Circuit stated that "willfulness could be established by proof that Nolan had the corporation pay the partnership at a time when he knew that the corporation was indebted for taxes, *or was reckless in that regard*." (emphasis added). *See also Gephart*, 818 F.2d at 475

---

**28.** From a practical standpoint, it matters little whether the availability of funds is regarded as a legitimate consideration in determining whether an individual is a responsible person. If the funds in question are indeed unavailable for payment to the IRS, a responsible person cannot be held liable under § 6672 because his failure to make payment from those funds is not willful. *See Mazo*, 591 F.2d at 1157. The Debtor's contention that the corporation's funds were commandeered by MNB will therefore be considered *infra* in the context of determining

whether the Debtor willfully failed to pay the delinquent taxes.

**29.** This is not to suggest that MNB could not also be subject to liability. As previously noted, more than one person may be deemed a "responsible person" under § 6672, and lending institutions may be subject to liability pursuant to § 6672 for withholding taxes that were not paid by the taxpayer. *Commercial Nat. Bank of Dallas v. United States*, 665 F.2d 743, 754–55 (5th Cir.1982).

(citing *Calderone* for the proposition that reckless disregard for "obvious" or "known" risks may constitute willfulness under § 6672). The Debtor's claim that actual knowledge of the delinquency must be demonstrated is therefore without merit.

*Blais* identified three typical scenarios in which a finding of willfulness has been based on reckless disregard:

First, courts have held that reliance upon the statements of a person in control of the finances of a company may constitute reckless disregard when the circumstances show that the responsible person knew that the person making the statements was unreliable. This requires a finding that the responsible person had knowledge that the other individual had in the past failed to perform adequately with regard to the financial affairs of the taxpayer entity....

Second, courts have held that "[w]illful conduct also includes failure to investigate or to correct mismanagement after having noticed that withholding taxes have not been remitted to the Government." [citing *Kalb*, 505 F.2d at 511] This requires a finding that the responsible person had "notice" that the taxes had not been remitted in the past.... If "notice" as used in *Kalb* is construed as requiring something less than "knowledge," cases in this category are in essence quite similar to those in the [next] group....

Third, courts have found that when a responsible person continues to pay other bills knowing that the business is in financial trouble, he willfully violates § 6672 if he fails to make reasonable inquiry as to whether money would or would not be available for payment of the taxes when they become due. [citing *Teel*, 529 F.2d at 905].

*Blais*, 612 F.Supp. at 710 (citation omitted).

There has been some disagreement in the reported decisions concerning whether reckless disregard is measured by a "subjective" or "objective" standard. Several courts have explicitly stated that a subjective standard applies, meaning that the court must find that the responsible person did in fact possess the relevant knowledge, whether such "knowledge" be with respect to the incompetence of a subordinate, the company's general financial distress or other pertinent facts. *See Blais*, 612 F.Supp. at 708; *Kalb*, 505 F.2d at 511; *Sawyer*, 831 F.2d at 759. Other cases have implied that an objective standard is appropriate. *Wright v. United States*, 809 F.2d 425, 427 (7th Cir.1987) ("[T]he 'responsible person' is liable if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.")[30] *See also Thomsen v. United States*, 887 F.2d 12, 18 (1st Cir. 1989) (quoting *Wright* and stating that "gross negligence" may constitute reckless disregard).

As a practical matter, however, this distinction is not very significant, inasmuch as the same result can be justified by application of either standard. Assume, for example, that the IRS mailed a series of delinquency notices to the CFO of a corporation; the CFO acknowledged receipt of correspondence from the IRS, but stated that he routinely ignored them. This conduct would obviously amount to gross negligence if measured against what a "reasonable person" would do. A court could legitimately reach the same conclusion under a subjective standard by simply discrediting the CFO's testimony as being too implausible. *Cf. Prosser, The Law of Torts*, at 185 (4th ed. 1971) (Stating that recklessness is usually defined in part as "unreasonable" conduct by an actor "in disregard of a risk known to him *or so obvious that he must be taken to have been aware of it.*") (emphasis added). The distinction between a subjective standard and an objective one may therefore boil down to whether one prefers to characterize the relevant information as constituting facts which the responsible person "must have known," *Burack v. United States*, 461 F.2d 1282,

---

**30.** The opinion in *Wright* thus contradicts the position subsequently taken by the same court in *Sawyer, supra,* with regard to whether a subjective or objective standard applies.

1292, 198 Ct.Cl. 855 (1972), or "clearly ought to have known." *Wright,* 809 F.2d at 427. *See generally Prosser, supra* at 183–85 (noting the difficulty in distinguishing "reckless disregard" from "gross negligence").[31]

■ The Debtor testified that he did not have actual knowledge of the delinquency in tax payments until "the last week of April, 1987," and the IRS does not dispute this contention. Page 17 of IRS' trial brief. The IRS instead argues that numerous monthly financial statements relating to most of 1984 and part of 1985 "should have caused [the Debtor] to investigate the status of the withholding tax liabilities." *Id.;* pages 6–8 of IRS' post-trial brief. In these statements, the entry for "Fed. Deposit–Payable" greatly exceeded the "Taxes–Payroll" entry. The Debtor apparently concedes that these data are reflective of a delinquency, Page 4 of Debtor's post-trial brief, but contends that he never noticed the discrepancy in his review of the statements. For a number of reasons, this contention appears credible.

It is undisputed that the Debtor's expertise was in computers, not finance or accounting. There is no evidence that he had the training or skill necessary to glean critical information from a fairly detailed financial statement.[32] In his review of these statements, the Debtor concentrated on gross sales and current expenses; he assumed that his outside accountants would highlight any "red flags" in the statements. This expectation may not have been justified in light of the Debtor's concession that his accountants were responsible only for compiling data and did not provide analysis; on the other hand, it is not implausible that a relatively unsophisticated entrepreneur would make such

an assumption. There is also no evidence to suggest that the Debtor had any particular reason to focus on those items in the financial statements relating to tax payments; during the time in question, the Debtor was under the understandable (if mistaken) impression that his companies were operating successfully. Furthermore, testimony showed that Brzezinski endeavored to keep the Debtor in the dark regarding the status of trust fund tax payments. Under these circumstances, the "warning signs" contained in the financial statements would not appear to be so manifest as to justify an inference either that the Debtor must have recognized these signs, or that his failure to recognize them amounted to gross negligence. This conclusion is further supported by the fact that the corporations' secured creditors also received copies of these financial statements and yet never brought the discrepancies to the attention of the Debtor. It can only be assumed from this that these lending institutions also failed to detect the discrepancy and/or to appreciate its significance.

■ The IRS argues that, even if the Debtor did not willfully fail to pay taxes prior to April 30, 1987, his conduct after that date was willful to the extent he used "unencumbered" corporate funds to pay creditors other than the IRS.[33] Pages 26–27 of IRS' post-trial brief. The Debtor responds that the funds in question were not "unencumbered." The failure to make withholding tax payments is not willful if the responsible person does not have unencumbered funds with which to make the payments. *See Mazo,* 591 F.2d at 1157. Because we have held that the Debtor became a responsible person upon Brzezinski's resignation, he is subject to liability

---

**31.** The cases are in agreement that negligence which falls short of gross negligence does not constitute willful conduct. *Calderone,* 799 F.2d at 259; *Monday,* 421 F.2d at 1215; *Thomsen,* 887 F.2d at 18; *Wright,* 809 F.2d at 427.

**32.** The entry for "Fed. Deposit–Payable" is one of 14 items under "Current Liabilities" in the balance sheet; the "Taxes–Payroll" entry is on a separate page and is one of 34 items under "Expenses" in the Statement of Income.

**33.** As previously discussed, the courts have indicated that knowledge of financial distress may trigger an obligation on the part of a responsible person to make further inquiry regarding the status of tax payments and to take appropriate action. *Blais,* 612 F.Supp. at 710. However, the IRS does not contend that the Debtor's response to MNB's letter of default in early April of 1987 was untimely or otherwise insufficient.

pursuant to § 6672 if, and to the extent that, his failure thereafter to make payments on the delinquent taxes was willful. The next issue which we must decide, then, is whether any funds generated by the companies after April 30, 1987, and paid to entities other than the IRS were "unencumbered."

The courts have generally refrained from specifying what constitutes "unencumbered" funds for purposes of § 6672. However, a review of the case law suggests that the term "unencumbered" can appropriately be defined as funds which are available to the taxpayer for use in its discretion. *See Sorenson v. United States,* 521 F.2d 325, 327 (9th Cir.1975) (referring to the "degree of control" that the responsible person had over a "trust account" containing funds which secured a bank loan); *In re Olson,* 101 B.R. 128, 130 (Bankr.D.Neb.1988) ("The Company, although under pressure from the lender with regard to ... the amount of money that the lender would make available for paying ordinary and necessary business expenses, had ... the absolute power to make all management determinations and the lender was not in control of any aspect of the Company."); *Browne v. United States,* 234 F.Supp. 19, 22 (D.Minn.1964) (holding that the responsible person was liable for unpaid withholding taxes with respect to which the secured creditor had "not at any time specifically direct[ed the corporation] to refrain" from paying to the IRS (quoting from a letter placed into evidence)); *United States v. Hill,* 368 F.2d 617, 622 (5th Cir.1966) (indicating that an "important factor" in determining liability under § 6672 is whether the taxpayer is "free to draw on its own [bank] account"); *Pacific Nat. Ins. Co. v. United States,* 270 F.Supp. 165, 169 (N.D.Cal.1967), *aff'd,* 422

F.2d 26 (9th Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970) (noting that the lender, which also guaranteed a loan to the taxpayer from another source, "exercise[d] complete dominion and control of the funds, and ... determine[d] in its sole discretion the creditors to be paid"); *Holland v. United States,* No. 83–1362, 1988 WL 179793 (E.D.Cal.1988) (LEXIS 16760) ("[T]he evidence presented shows that there was no interference by the bank in the decision of which creditors were to be paid.")

■ Where the taxpayer's discretion in the use of funds is subject to restrictions imposed by a creditor holding a security interest in the funds which is superior to any interest claimed by the IRS, the funds are regarded as encumbered if those restrictions preclude the taxpayer from using the funds to pay the trust fund taxes. *See Slodov,* 436 U.S. at 259, 98 S.Ct. at 1791; *Brown v. United States,* 591 F.2d 1136, 1141 (5th Cir.1979); *Holland, supra.*[34]

■ The IRS initially argued that "[t]here was approximately $98,000 available to pay the bills after [the Debtor] concedes he knew of the past-due tax obligations." Page 17 of IRS' trial brief. The Debtor contends that these funds were subject to a security interest held by MNB, and were not available for payment to the IRS of delinquent taxes. The IRS subsequently modified its position, arguing that there was "at least $22,000" in cash sales available for payment to the corporations' employees that were "not subject to the Bank's security interest." Page 27 of IRS' post-trial brief. However, the security agreement between MNB and Tri–Cities includes as collateral the proceeds of inventory (Page 1 of security agreement). The

**34.** The existence of a superior lien, without more, does not create an encumbrance for purposes of § 6672: there must be conditions imposed by the lender which render the funds unavailable for payment to the IRS of the trust fund taxes for the time period in question. *See Olson,* 101 B.R. at 133 ("[T]he lender, although having a security interest in all of the personal property of the Company, including receivables, provided to the Company gross payroll amounts whenever payroll was requested.... Therefore,

the Court concludes that sufficient funds were available to make the [unpaid] trust fund tax payments and that the Company had the authority to make such payments with funds advanced for payroll purposes.") Of course, the encumbrance must be legitimate; the court may disregard a purported "encumbrance" if there is evidence indicating that it was nothing more than a scheme designed to avoid tax payments. *See Brown,* 591 F.2d at 1141–42.

Debtor testified that the funds used to pay employees came directly from MNB, and were forwarded to Tri–Cities for the specific purpose of paying payroll. The IRS does not dispute this contention, but instead suggests that the funds in question were not encumbered because they were not funds which "may be paid only to the creditor holding the security interest." Page 20 of IRS' post-trial brief.

The IRS' contention that funds are encumbered only if the lienholder requires that they be paid directly to it is without merit. In determining whether funds are encumbered, the cases have focused on the extent to which the employer has unimpaired access to or control of the funds. From the Debtor's perspective, funds are just as "unavailable," for purposes of paying the IRS, whether the creditor requires that the funds be applied toward the indebtedness or instead directs payment to some other entity. The proposition advanced by the IRS therefore runs contrary to these cases, and the IRS cites no authority or rationale to support its argument.

As previously stated, the fact that funds are subject to a security interest does not itself warrant a finding that the funds are "encumbered." The IRS is therefore correct in stating that "[t]he mere existence of a security interest in favor of one creditor cannot be held to a give a responsible person the blanket license to prefer all types of other creditors over the United States." Page 20 of IRS' post-trial brief. However, there is no indication that the Debtor received a "blanket license" from MNB to disburse the funds in question as he pleased; to the contrary, the evidence demonstrated that MNB permitted the funds to be used only for current payroll purposes and payment of minimal operating expenses such as rent and utilities. Although the Debtor was allowed to and did pay current withholding tax obligations, MNB did not permit any of the funds to be applied toward delinquent withholding taxes. Funds which are subject to such restrictions are clearly "encumbered." *See* *McCullough v. United States*, 462 F.2d 588, 590 (5th Cir.1972) ("[T]he continued operation [of the taxpaying corporation]

... was at the will of a large factoring company which had security instruments covering substantially all the assets of the corporation and advanced funds for the operation only as itemized by specific voucher. Under these circumstances no unencumbered funds became available to the taxpayer out of which he could reinstate the so-called 'trust fund,' and then pay the same over to the government."); *Browne*, 234 F.Supp. at 22 (holding that Browne was not liable under § 6672 for unpaid tax obligations arising after a secured creditor "commandeered all the funds and assets of [the corporation], and Browne no longer had any control over the funds of the corporation"). We conclude that because the funds in question were encumbered, the Debtor's nonpayment of past due trust fund taxes was not willful.

## CONCLUSION

For the reasons stated, we hold that the Debtor's objection to the IRS' claim against the estate is correct and that the Debtor's estate is not liable for the 100% penalty under § 6672. A separate order sustaining the objection and disallowing the claim has been entered.