William A. KRUEGER, Plaintiff,

v.

UNITED STATES of America,
Defendant and Third-Party
Plaintiff,

v.

Henry MAROHL et al., Third-Party
Defendants.

No. 68–C–257.

United States District Court,
E. D. Wisconsin.

March 17, 1971.

Peter F. Reiske, Milwaukee, Wis., for plaintiff.

Nestor Nicholas, Tax Refund Division, Dept. of Justice, Washington, D. C., David Cannon, Milwaukee, Wis., for defendants.

Joseph Doucette, Milwaukee, Wis., for Henry Marohl, Beverly Marohl and Lillian Premke.

Thomas Boyer, Milwaukee, Wis., for Harry V. Quadracci.

## OPINION

TEHAN, Chief Judge.

Income and social security taxes withheld by Pan American Motel, Inc. and Pan American Club, Inc. from the wages of their employees for December, 1961 were not paid over to the government. This case presents the question of ascertainment of those personally liable for the failure to pay those taxes. Assessments of a 100% penalty were made by the Commissioner of Internal Revenue under § 6672, Title 26 U.S.C. against William A. Krueger, Krueger Enterprises, Inc., Harry V. Quadracci, Henry Marohl, Beverly Marohl and Lillian Premke, the latter three being directors and officers of the two corporations. Krueger paid the amount of the assessment against him and, after timely claims for refund had been disallowed, brought this suit against the United States of America for a refund. The defendant joined the others against whom assessments were made as third party defendants and various cross-claims have been made.

Following the trial, the defendant abandoned its claims against Krueger Enterprises, Inc., Quadracci, Beverly Marohl and Lillian Premke. We agree that their liability has not been estab-

lished and it does not appear that any party is now pressing a claim against them. The only parties remaining whose liability is in question, therefore, are William A. Krueger and Henry Marohl. In our opinion the personal liability of both has been established.

In late 1961, while Marohl was president of Motel and Club, those companies were experiencing financial difficulties. At that time, Krueger Enterprises, Inc. had a second mortgage on the realty of both companies and payments were delinquent. Marohl was attempting to obtain refinancing to permit paying of the first mortgage, held by First Federal Savings & Loan Association, and of the second mortgage, and sought financial help from Krueger to carry the companies though until negotiations for that financing, which he expected to be finalized before the first of January, 1962, were completed. In order to protect the second mortgage, Krueger arranged for a $40,000 advance to pay Motel and Club's pressing obligations, an advance made pursuant to an agreement between Henry R. Marohl, Inc., owner of all Motel stock [1] and Krueger Enterprises, Inc., a company controlled by Krueger of which he was president and treasurer, his wife vice-president, and Quadracci, his attorney, secretary.

The agreement between Henry R. Marohl, Inc. and Krueger Enterprises, Inc., dated November 27, 1961, provided for establishment of a $40,000 trust account, with Marohl and Quadracci trustees, to be used to acquire outstanding chattel mortgages against Motel personalty and to make payment on the first mortgage. $19,600 of that amount was described as consideration for assignment to Krueger Enterprises of 51% of Motel's stock by Henry R. Marohl, Inc. Both parties agreed that title to chattel mortgages acquired through payments by the trustees would be vested in William A. Krueger (51%) and Henry Marohl (49%), that Krueger or someone of his choosing would become a director of Motel and that prior approval of both parties was required "for all payments of payables other than current trade payables."

The agreed upon payment of $40,000 was made, but no actual transfer of stock pursuant to the agreement occurred at that time or any time. Neither did Krueger or his nominee become a director of Motel.

Prior to November 27th, Marohl had complete control of Motel and Club and it was he who determined which creditors would be paid. No change in this control occurred immediately thereafter and the clause in the November 27th agreement regarding approval of both parties thereto to certain payments was not put into effect.

Marohl claims that in mid-December, Quadracci, representing Krueger, informed him that his approval would be required on all checks sent out by the companies, including payments on trade payables. He also claims that from that time on, checks not approved by Quadracci would not go through the bank or would have to be repaid by Marohl, and that Quadracci came to ok checks about twice a week. Our review of Marohl's testimony convinces us that his memory was faulty as to the period when he was unable to determine which obligations of Club and Motel could be paid,[2] and that he could make such determinations until Motel made an assignment for the benefit of creditors on January 15, 1962. It should be noted that this assignment was executed by Marohl.

Krueger claims that his status with relation to Motel and Club was only that of a second mortgage holder, and that he was not a person with a duty to collect

---

1. Motel, in turn, owned all of the stock of Club.

2. In arriving at this conclusion we rely in part on the fact that Marohl did, in fact, make payments to himself, one as late as about January 14, 1962, and admitted-ly recognized his own liability for taxes as late as January 6, 1962. We also rely on the fact that Quadracci was not in town most of December, 1961, and could not therefore have approved checks during that period.

and pay over income and social security taxes withheld from the wages of Motel and Club employees for the period in question.

It is true that Krueger was not an officer, director or stockholder of Motel and Club in December, 1961 or January, 1962. However, the agreement of November 27, 1961, gave him the right to be or name a director of Motel, the parent company, and gave his company, Krueger Enterprises, a right to an assignment of 51% of Motel's stock. In our opinion the record establishes that Krueger, when he so chose, exercised the authority over Motel and Club that he would have had had the November 27th agreement been followed to the letter and was a de facto officer of the companies.

It was Krueger who called a meeting on January 6, 1962 at which it was decided that Motel and Club would go into receivership. An attorney brought to that meeting by Krueger's attorney, Quadracci, because of his familiarity with bankruptcy, suggested the person to be appointed receiver. Although Krueger here asserts that his participation in that meeting was as a second mortgage holder only, it is clear that at that time he conceived his role to be a stronger one, which it in fact was. Thus, in a letter to Henry R. Marohl, Inc., prepared by Krueger on behalf of Krueger Enterprises, Inc. for presentation at the January 6th meeting, he stated:

"As the owner of the majority of the outstanding stock of Pan American Motel, Inc., the undersigned directs you as the President of this corporation to forthwith turn over the stock books, minute books, check books, and all other relevant records to our attorney, Harry V. Quadracci, 735 North Water Street, Milwaukee 2, Wisconsin.

This letter is also notice to you of our desire that you call a special meeting of the stockholders of this corporation, all pursuant to the bylaws of this corporation for the purpose of the election of a new Board of Directors, which special meeting of stockholders shall take place at the earliest possible time consistent with the provisions of the bylaws of this corporation." (Exh. 4)

And in discussing Quadracci's role at the meeting, Krueger stated on cross-examination:

"Q. So if Mr. Quadracci would have said, for instance, 'Let's not go into receivership,' and suggested some other route, he actually wouldn't have had any power to direct the Club and Motel in that direction.

A. Not by himself.

Q. He would have had to have your okay?

A. That's right.

Q. And plus the okay probably of the Premkes—Mrs. Premke and the Marohls; isn't that true?

A. Yes." (Pp. 71–72)

admitting his participation in decision-making authority.

Both Marohl and Krueger admittedly knew on January 6, 1962 that income and social security taxes withheld from the wages of Motel and Club employees for December, 1961, were not paid over to the government. Both knew at that time that funds were available to effect payment. Both possessed sufficient authority to direct payment and, for reasons stated previously, we believe that both were persons required to collect, truthfully account for and pay over within the meaning of § 6671(b) and § 6672. Both participated in the decision to effect assignments for the benefit of creditors and failed to see that the taxes were paid before the assignments were completed. While their conduct in failing to assure the payment of the taxes involved herein was in no respect engaged in with a bad motive or an intent to defraud the United States, we are convinced that it was wilful within the meaning of § 6672,[3] and that the assessments against them were properly levied.

3. Monday v. United States, 421 F.2d 1210 (7th Cir. 1970).

Counsel for the defendant will prepare findings of fact and conclusions of law in conformity with this opinion and submit them to opposing counsel for approval as to form.