**In re Joseph Lajus BRADY, III, and Valeria Elaine H. Brady, Debtors.**

**Bankruptcy No. BK–N–88–910.**

United States Bankruptcy Court,
D. Nevada.

Jan. 19, 1990.

James L. Morgan & Lee S. Molof, Henderson & Nelson, Reno, Nev., for debtor.

Brian Feldman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for creditor.

## MEMORANDUM DECISION

JAMES H. THOMPSON, Bankruptcy Judge.

This matter is before the Court on the objection of debtors, Joseph & Valeria Brady, to the claim of the Internal Revenue Service (IRS). The IRS filed a secured claim for a 100 percent penalty of $47,-250.34, which is the unpaid employee withholding taxes for American Electronics Sales, Inc. (American), for the third and fourth quarters of 1982 and the first quar-

ter of 1983. The IRS asserts this claim pursuant to Section 6672 of the Internal Revenue Code because it contends Joseph Brady was a person required to, but who willfully failed to, collect, truthfully account for, and pay over the employee withholding taxes. The question for decision is whether Mr. Brady was a responsible person for the three calendar quarters in question.

## FACTS

American was incorporated in July, 1980. Its officers were James Phelan, President, and Joseph Brady, Vice President. Phelan and Brady each owned fifty percent of American's stock. Brady and Phelan each took the same salary. The business first centered on the sale of electronic products at road shows.[1] As the company developed it opened several retail stores and continued to conduct road shows.

James Phelan, a former CPA, set up American's books and managed its financial and administrative functions. Pam Harris was hired to perform bookkeeping and secretarial functions. David Harris, an executive vice president, was hired to manage the inventory and the new retail stores. Brady's primary responsibility was to organize and conduct the road shows. He was infrequently in the corporate offices.

American's checkbooks were kept at the main office in Sacramento and two signatures were required. James Phelan, Joseph Brady, Pam Harris and David Harris all signed checks occasionally, but the bulk of the checks were signed by Phelan and Pam Harris. The consistent testimony was that all checks, regardless of who signed, were cleared verbally or in writing by Phelan.[2]

American had financial problems in 1982 and those problems increased throughout 1982 and into 1983. David Harris resigned

---

1. To conduct a "road show" Brady would rent exhibition floor space and advertise a liquidation auction or sale of electronic equipment. American had a truck to haul the inventory and employed a truck driver, auctioneer, two cashiers and other personnel as needed.

2. Phelan's testimony was that Brady *"could have"* ordered that checks be sent out, not that he did so order.

in mid-January of 1983 and Pam Harris in late February of 1983. In late June of 1983 James Phelan resigned and Brady assumed full control. In July of 1983 the IRS contacted Brady about the delinquent employee withholding tax returns for the third and fourth quarters of 1982. When Brady investigated American's records the file copies of the returns indicated that the returns and checks had been sent; however, the IRS did not receive them. American had also received a letter from the IRS indicating that American was due a refund for overpayment of withheld employee taxes. When Brady presented this letter to the IRS it was investigated and determined to be a clerical error. The file copies of the original returns, which had been prepared by Pam Harris were sent by Brady to the IRS in September of 1983, but no payment was made. American filed its bankruptcy petition on September 20, 1983, and Brady continued to operate American until conversion to chapter seven in May of 1984. The IRS assessed the 100 percent penalty against Phelan in March of 1984. Pam and David Harris were assessed the 100 percent penalty but they were found not liable upon later appeal to the IRS. Joseph Brady was assessed December 14, 1987, and the IRS filed its claim November 14, 1988.

## BURDEN OF PROOF

■ Although there is a split of authority,[3] this Court holds that the IRS, as the claimant, has the ultimate burden of persuasion when the debtor has met the burden of overcoming the prima facia evidence of the proof of claim. The government is treated like any other claimant under the bankruptcy code because the estate is a party in interest and not just the taxpayer. *In re Fidelity Holding Company, Ltd.*, 837 F.2d 696, 698 (5th Cir.1988). It is especially appropriate in this case to require the IRS to meet the burden of proof because the person who for all practical purposes

decided the assessment, actually testified. Revenue Agent Pitts testified fully and was cross examined as to why he recommended that Mr. Brady be assessed. His earlier decision to assess the debtor should not be presumptively given a greater weight than his actual testimony.

## RESPONSIBLE PERSON

Section 6672 of the Internal Revenue Code states:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

In *Slodov v. United States*, 436 U.S. 238, 250, 98 S.Ct. 1778, 1786, 56 L.Ed.2d 251 (1978) the United States Supreme Court held that the phrase " '[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title' was meant to limit section 6672 to persons responsible for collection of third-party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question." Section 6671(b) states:

The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs.

The statutory definition of "responsible person" is thus found by combining the two statutory sections. A "responsible person" *includes*[4] an officer, employee or

---

3. *Compare, In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988); *In re Hudson Oil Co., Inc.*, 91 B.R. 932, 945 (Bankr.D.Kansas 1988) *with, In re Weinberg*, 81 B.R. 145, 146 (Bankr.S.D.Fla.1987); *In re Summers*, 32 B.R.

861, 866 (Bankr.N.D.Ohio 1983) *and with, In re Wells*, 51 B.R. 563, 567 (D.Colo.1985).

4. Congress must have intended the courts to have considerable flexibility in applying this very open-ended definition. It is a definition by example instead of by description or limitation.

member of a corporation or partnership, who as such officer, employee or member is under a duty to collect taxes owed by third parties. A person is a "responsible person" if he has a duty to perform any of the three functions set forth in Section 6672. *Slodov*, 436 U.S. at 250, 98 S.Ct. at 1786.

■ Mr. Brady is without dispute an officer and employee of American so the first part of the definition is met. However, the second part of the definition is more difficult to apply. Was Brady, as a corporate officer and employee, under a duty to perform any one of the functions required by Section 6672?

## DUTY TO COLLECT

Mr. Brady was one of two people who formed American. Mr. Brady was also a vice president, a director and owned 50 percent of American's stock.[5] Mr. Brady had authority to co-sign checks, as one of two required signatures, and he did so on an irregular basis. Mr. Brady also had some say in which employees were hired and fired. Clearly because of his ownership interest and titles, Mr. Brady was one of the moving forces in American.

The courts have recognized that it is usual for the principals of a business to divide authority and responsibility between them. *Bauer v. United States*, 543 F.2d 142, 149, 211 Ct.Cl. 276 (1976). This is especially common and appropriate when one co-owner has financial and managerial skills and the other's skills are in other areas. From the beginning of American, Mr. Phelan was delegated the responsibility to set up and manage the finances. All the testimony agreed that Mr. Phelan was in charge of bill paying and deciding which creditors were paid and their order of payment. Mr. Phelan set up a voucher system for the payment of creditors and regularly compiled lists indicating the order in which creditors would be paid. Pam Harris did the actual preparation of voucher forms and checks, but Phelan was in control of who got paid. The IRS apparently decided that Phelan and not Pam Harris was in control of payment of the taxes as an IRS appeals officer determined that she was not a responsible person or at least not a willfully responsible person.

Mr. Brady's contribution and duties centered on conducting road shows. He had almost daily telephone contact with the Reno office to check on inventory and to report sales receipts. Brady never prepared or supervised preparation of the payroll or tax returns nor did he sign the payroll checks or quarterly returns. Brady's principal duties and responsibility required him to be out of the office for extended periods.[6] Mr. Brady's role in this corporation is strikingly similar to the facts in *Elmore v. United States*, 843 F.2d 1128 (8th Cir.1988).

Much testimony and evidence was focused on whether or not Brady actually knew that American had tax problems. It was not established that Brady possessed knowledge of late or nonpayment of payroll taxes. Such knowledge, if any, would be irrelevant to determining responsibility. "Responsibility is a matter of one's status, duty, and authority, not knowledge." *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir.1979).

The IRS argues that as a director, vice president, and 50 percent share holder, Mr. Brady had a corporate duty to make sure the payroll taxes were paid. However, this court finds that the corporate duty owed to American to see that the taxes were paid was given exclusively to Mr. Phelan. While it is clear that more than one person can be a responsible person, *White v. United States*, 372 F.2d 513, 516, 178 Ct.Cl. 765

---

**5.** Stock ownership is not expressly included in the definition of person in section 6671(b) as a stockholder is not an officer or employee of a corporation. However, cases have held stock ownership or investment to be a factor in determining responsibility. *E.g., Koegel v. United States*, 437 F.Supp. 176 (S.D.N.Y.1977); *Krueger v. United States*, 326 F.Supp. 231 (E.D.Wis.1971).

**6.** Between July 1, 1982 and March 31, 1983, Brady conducted road shows in 114 cities in 10 states. Brady was in the Sacramento office six times in August, four in September, twice in October and December, three times in January, five times in February and twice in March.

(1967), it is equally clear that more than one person is not required. 26 U.S.C. § 6671(b).

Numerous courts have held that the controlling factor in determining who is a responsible person is who controls which creditors will be paid and when. *E.g., Kappas v. United States*, 578 F.Supp. 1435, 1439 (1983). "Sections 6672 and 7202 were designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials *responsible for the employer's decisions regarding withholding and payment* to civil and criminal penalties for the employer's delinquency." *Slodov*, 436 U.S. at 247, 98 S.Ct. at 1785 (Emphasis added).

A corporate assignment of different duties to different people is appropriate and usually necessary. Corporate titles are typically given to signify this division of duties. The title of treasurer may be sufficient by itself to presume that a party is a responsible person. However, the title of vice president is a much more flexible title that often signifies duties completely removed from finance and operations. *Bauer*, 543 F.2d at 149. Similarly, the required duties of a director include the overall management of the corporation, not the day to day payment of creditors. The law does not require that all people with authority in a corporation be required to verify that payroll taxes are paid. *Maggy v. United States*, 560 F.2d 1372, 1375 (9th Cir.1977).

Mr. Brady did not have a corporate duty to make sure the payroll taxes were paid until Mr. Phelan left the corporation in June of 1983. Mr. Brady assumed control of American at that time and so assumed the responsibility to see that the taxes were paid. *Slodov* holds that a person who becomes a responsible person after the trust funds are delinquent and have been dissipated is not liable for the 100% penalty and does not have a duty to pay the delinquent withholding taxes from any and all available assets. *Slodov*, 436 U.S. at 254, 98 S.Ct. at 1788. Mr. Brady was not a responsible person during the delinquent quarters so he should not be assessed the 100 percent penalty for those quarters.

## CONCLUSION

Looking at the sum total of all of the particular facts in this case, this court finds that Mr. Brady was not a responsible person as defined in 26 U.S.C. §§ 6671 and 6672 during the time in question. This court would make the same finding had the debtors and not the government been assigned the ultimate burden of proof. Therefore, the objection of the debtors is sustained and the claim of the IRS is disallowed.