**In re Paul E. ABEL, Debtor.**

**Paul E. ABEL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Bankruptcy No. 92–12984.
Adv. No. 92–1262.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 5, 1994.

time period in question. If this Court finds that the Debtor was a responsible person, we must then decide whether the Debtor's failure to remit trust fund taxes during the period in question was willful. If this Court decides either the first or second issue in the negative, the Internal Revenue Services' (the "IRS") proof of claim will be disallowed. If this Court decides both issues in the affirmative, then the IRS' proof of claim will be allowed. In order to render these decisions, the Court must first determine which party bears the burden of proof which is also in dispute.

### BACKGROUND.

On May 15, 1992, the Debtor filed a voluntary petition seeking relief under chapter 13 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §§ 1301 *et seq.* The Defendant, the United States of America, by and through the IRS, filed a proof of claim in the Debtor's bankruptcy case claiming that the Debtor, a responsible person under IRC § 6672, owed the IRS payroll withholding taxes in the amount of $113,825.43.

In the Petition, the Debtor requested that the Court enter an Order (1) assessing the Debtor's liability for the taxes at zero and (2) disallowing the IRS' proof of claim. A hearing was held on the Petition on November 29, 1993.

### FACTS.

The IRS claims that the Debtor owes payroll withholding taxes under IRC § 6672 as a result of his position as a "responsible person" with a Pennsylvania corporation known as Joseph J. Abel & Sons, Inc. (the "Company"). The Company was in the construction business. The parties admit that the Company failed to remit to the IRS payroll withholding taxes accrued during the period ended June 30, 1987 through the period ended September 30, 1988. This time period will be referred to as the period in question throughout this opinion.

At the time the Company was incorporated in 1963, it was owned in equal one-third shares by Joseph J. Abel and his two sons, David J. Abel ("David") and the Debtor. After Joseph J. Abel died in 1983, David and

Carol C. Priest, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC., for U.S.

Matthew R. Nahrgang, Koresko & Noonan, Norristown, PA.

Edward Sparkman, Philadelphia, PA.

### OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge:

The Debtor initiated this adversary proceeding on December 17, 1992 by filing a Petition to Determine Tax Liability Pursuant to 11 U.S.C. § 505(a), and Objection to Claim (the "Petition"). The Court must initially decide whether the Debtor was a "responsible person" within the meaning of Internal Revenue Code ("IRC") § 6672 during the

the Debtor became 50% owners of the Company until September, 1988 when the Debtor resigned.

During the period in question, David was the President of the Company and the Debtor was the Secretary. In addition to his role as an officer of the Company, the Debtor was responsible for supervising construction workers in the field, conducting on-site inspections, drafting estimates, occasionally paying for on-site deliveries, and, with David, hiring and firing employees. The Debtor could and occasionally did sign checks on behalf of the Company; no co-signers were required. Government Exhibit 7. The Company checks signed by the Debtor were usually payments for on-site deliveries of materials and supplies. On one occasion, the Debtor prepared and signed three payroll checks on-site to replace lost payroll checks. The parties agree that the Debtor's duties never included the payment of salaries, or the payment of any obligations relating to payroll including the payment of payroll taxes. The Debtor did not prepare tax returns.[1]

The Debtor also provided financial assistance to the Company. The Debtor and his wife executed a personal guaranty on June 17, 1988, to provide additional security for an existing loan to the Company. Government Exhibit 6. The guaranty, however, was provided on account of the Company's existing debt to its lender and not to obtain new or additional credit at that time.

Notwithstanding some initial confusion due to the passage of time,[2] the Debtor credibly testified that he first became aware in September of 1988 that the payroll taxes were not paid. As a result, the Debtor hired an attorney and an accountant to review the Company's books and records. The Debtor

resigned from the Company in September of 1988 on the advice of his attorney and accountant.

### DISCUSSION.

■ *Burden of Proof.* In order to address the substantive issues under IRC § 6672, this Court must decide which party bears the burden of proof. The Debtor argues that the IRS' proof of claim constitutes *prima facie* evidence of the validity and amount of the debt, but that this presumption is rebuttable. If, according to the Debtor, he puts on sufficient evidence to rebut the presumption, the burden then shifts to the IRS and is one of a preponderance of the evidence. The IRS argues that the tax assessment and proof of claim are presumed to be correct, and the Debtor has the burden of proof by preponderance of the evidence to show that he is not a responsible person under § 6672 or that he did not willfully fail to pay the payroll taxes. Thus, while the parties agree as to the presumed correctness of the proof of claim, they disagree on the evidence necessary to rebut the presumption.

Our analysis begins with the Third Circuit Court of Appeals' decision in *Resyn Corporation v. United States*, 851 F.2d 660 (3d Cir. 1988). The case involved an appeal from the United States District Court for the Eastern District of Pennsylvania, affirming an Order of the Bankruptcy Court allowing an IRS proof of claim for corporate income tax deficiencies and interest penalties. The basis for the claim was that the taxpayer had fraudulently understated its corporate income and overstated its cost of goods sold and taken certain deductions which were improper.

In *Resyn*, the Third Circuit Court of Appeals, relying on non-bankruptcy cases, stated that the government's deficiency assess-

---

1. It was disputed whether the Debtor's duties included the preparation and execution of the Company's tax returns. The IRS offered into evidence a tax return allegedly signed by the Debtor. The testimony of the Debtor and David, however, established that the Debtor's duties did not include the preparation of tax returns and, notwithstanding the fact that the Debtor's name appeared on a tax return, the signature on the tax return was not that of the Debtor.

2. In the Amended Joint Pre–Trial Statement submitted by the parties, the Debtor admits that he

first became aware of the nonpayment of the taxes on or about June of 1988 when informed of this fact by his brother. At the trial, the Debtor, after refreshing his recollection by reviewing information he provided to the IRS in September of 1988, remembered that he actually first became aware in September of 1988 that the taxes were not paid. At that time, the Debtor's brother informed the Debtor that the taxes were not paid and advised the Debtor to get a mortgage on his house to pay the taxes.

ment "ordinarily is afforded a presumption of correctness, thus placing the burden of producing evidence to rebut that presumption squarely on the taxpayer." *Id.* at 663 (citing *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935) and *Anastasto v. Commissioner*, 794 F.2d 884, 886 (3rd Cir. 1986)).

> "The burden of proving that an assessment is arbitrary and excessive rests on the taxpayer; if the taxpayer cannot prove that the assessment was arbitrary, it retains the burden of overcoming the presumption in favor of the government that the assessment was not erroneous." *Id.* (omitting citations). "However, once the taxpayer has sustained its burden of proving that the assessment is arbitrary and excessive, i.e., that it lacks a rational foundation in fact and is based upon unsupported assertions, the ultimate burden of proving that the assessment is correct is placed on the government." *Id.* (citing *Baird v. Commissioner*, 438 F.2d 490, 492 (3d Cir. 1971)).

The rule allocating the burden of proof to the taxpayer in tax assessment cases furthers certain well-established public policies. The Third Circuit Court of Appeals, in a non-bankruptcy case, identified those policies as (1) the requirement that the taxpayer meet bookkeeping obligations placed upon him by the IRC, and (2) the requirement that corporate officers explain their failure to perform duties imposed upon them by law, i.e., the duty to collect and pay over the taxes withheld and willfulness in the failure to do so. It also recognizes that the taxpayer has more readily available to him the correct facts and figures. *Psaty v. United States of America*, 442 F.2d 1154, 1160 (3d Cir.1970).

Applying the foregoing burden of proof, the Court of Appeals in *Resyn* concluded that the debtor failed to make a showing that the tax assessment was arbitrary and excessive so that the burden never shifted to the government to prove that the assessment was correct and the debtor retained the bur-

den of proving that the assessment was incorrect. *Resyn*, 851 F.2d at 663.

The Court of Appeal's analysis diverges from those cases that have recognized the applicability of Bankruptcy Rule of Procedure 3001(f) [3] and its predecessor Rule 301(b) and applied a lesser burden in the context of bankruptcy tax claims litigation than in non-bankruptcy tax assessment cases. *See, e.g., California State Board of Equalization v. The Official Unsecured Creditors' Committee (In re Fidelity Holding Company, Ltd.)*, 837 F.2d 696, 698 (5th Cir.1988); *Watson v. Thompson*, 456 F.Supp. 432, 435 (S.D.Ga. 1978); *In re Avien*, 390 F.Supp. 1335, 1341–42 (E.D.N.Y.), *aff'd*, 532 F.2d 273 (2d Cir. 1976); *In re Premo*, 116 B.R. 515, 523 (Bankr.E.D.Mich.1990); *In re Brady*, 110 B.R. 16, 18 (Bankr.D.Nev.1990); *In re Hudson Oil Co., Inc.*, 91 B.R. 932, 945 (Bankr. D.Kan.1988); *In re L.G.J. Restaurant*, 27 B.R. 455, 459 (Bankr.E.D.N.Y.1983). In recognizing an exception under the Bankruptcy Code to the traditional burdens in tax assessment cases, the Fifth Circuit Court of Appeals stated:

> Under Bankruptcy Rule 301(b) [now 3001(f)], a party correctly filing a proof of claim is deemed to have established a *prima facie* case against the debtor's assets. (citation omitted). The objecting party must produce the evidence rebutting the claimant or else the claimant will prevail. (citation omitted). If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.' The ultimate burden of proof always rests on the claimant. (citation omitted). This burden does not shift even where the claimant is a state or federal taxing authority. (citation omitted). The Bankruptcy Code, under Rule 301(b), does not differentiate between government and private claimants when proofs of claim are filed. *Fidelity Holding*, 837 F.2d at 698.

In the context of claims litigation, the evidence produced by the debtor must only be

---

**3.** Federal Rule of Bankruptcy Procedure 3001(f) provides as follows: "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."

"of a probative force equal to that of the allegations of the creditor's proof of claim." *In re Wells,* 51 B.R. 563, 566 (D.Col.1985). This is more properly described as a burden of going forward since the burden of proof is always on the claimant to prove the validity of the claim by a preponderance of the evidence. *In re Wall to Wall Sound & Video, Inc.,* 151 B.R. 700, 701 (Bankr.E.D.Pa.1993).

We believe that the Bankruptcy Code and Rule exception applies in this proceeding because the *Resyn* burden was intended to apply to a deficiency tax assessment and not a claim against the debtor based on IRC § 6672.[4] *Resyn* requires the taxpayer to establish that the assessment is "arbitrary and excessive" in order to shift the burden to the government. A showing that a tax is excessive implies that there is a challenge to the amount of the tax which is precisely the case in a deficiency assessment such as *Resyn.* Responsible person liability under § 6672 is not a matter of the amount of the tax which is separately established based on the activity of the taxpayer with the income, not the responsible person. The burden of establishing that the assessment is excessive properly lies with the taxpayer incurring the income and not the debtor challenging his responsibility for that liquidated amount.

Further evidence that the *Resyn* burden of proof was intended to apply in a deficiency tax assessment and not a § 6672 proceeding is found in an examination of the policy underpinnings for establishing the burden. Fact finding in a deficiency assessment case is furthered by requiring proper recordkeeping by the taxpayer. Placing a heightened litigation burden on a potentially responsible person, however, does not advance a similar purpose since as previously noted, the responsible person is not necessarily charged with the bookkeeping obligations relating to the withholding taxes. A responsible person's duty is to collect, truthfully account for or pay over certain taxes. *See* page 999 *infra.* While responsible party liability may be imposed on one with bookkeeping obli-

gations, responsibility has a much broader reach.[5] Given the natural allocation of tasks in any organization, it is difficult to understand how a heightened burden imposed upon a person potentially responsible under § 6672 will promote better recordkeeping.

Nor will the potentially responsible person necessarily have better access to correct facts and figures to justify the imposition of a higher burden. The facts that are at issue in a § 6672 proceeding, unlike a tax deficiency assessment, do not necessarily require access to records but rather are primarily resolved by testimonial evidence. *Premo,* 116 B.R. at 523 n. 15 (quoting the argument in *McCormick On Evidence,* § 337 at 950 (3d ed. 1984) that the significance of access to records in fixing the burden of proof is overstated.)

Even assuming the debtor/potentially responsible person had better access to information, establishing the general bankruptcy burden of proof based on this policy consideration gives it too much weight since in bankruptcy an objection to a claim may be made by any party in interest, not just the debtor. 11 U.S.C. § 502(a). As the court in *Premo,* 116 B.R. at 523, recognized:

> There is usually no reason to presume that another creditor, or even a bankruptcy trustee, has greater access to the debtor's documents than does the IRS. As the court noted in *Brady,* 'the estate is a party in interest and not just the taxpayer.' 110 B.R. at 18. The court's generalization [that the taxpayer is more likely to have access to relevant information] in *Rexach* [*United States v. Rexach,* 482 F.2d 10 (1st Cir.), *cert. denied* 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973)] therefore breaks down to some extent in the context of bankruptcy, where many parties are involved in addition to the IRS and the taxpayer.

*See also In re Fidelity America Financial Corp., (Kransdorf and Official Creditors' Committee v. Internal Revenue Service,* 91–1 USTC (CCH) ¶ 50,161 (Bankr.E.D.Pa.1990))

---

4. *But see In re Green,* 89 B.R. 466 (Bankr.E.D.Pa. 1988) in which the *Resyn* burden of proof is applied in IRS claim litigation based on 26 U.S.C. § 6672.

5. In the instant case, the supervision and performance of the Company's bookkeeping obligations was a duty assumed by David.

(where the objector is the Chapter 11 trustee, not the taxpayer/debtor, *Resyn* is inapplicable to the extent it was based on the taxpayer's presumed access to relevant financial information.)

In the *Psaty* case, the Third Circuit Court of Appeals identified a public policy furthered by placing the ultimate burden on the taxpayer which is implicated in this case, i.e., the requirement that corporate officers explain their failure to perform duties imposed on them by law to collect and pay over taxes. Since *Psaty* was not a bankruptcy case, the Third Circuit did not have before it the question of whether that policy was served in bankruptcy where the objecting party could be a party in interest and not the debtor[6] and whether there were other, and perhaps more compelling, bankruptcy policies to be considered.

"The practice in bankruptcy of requiring the claimant to prove its claim is in essence an application of the general rule allocating the burden of proof to the moving party." *Premo*, 116 B.R. at 523. The courts that have done so even when the claimant is the IRS have recognized that the Bankruptcy Code does not distinguish government claims from claims of private entities. *Id.; Fidelity Holding*, 837 F.2d at 698. More significantly, the IRS should be treated like any other claimant because the estate is a party in interest, not just the taxpayer. *Brady*, 110 B.R. at 18. We believe that the policy considerations that have generated the tax litigation rule (placing the burden on the taxpayer) are not undermined by recognition of an exception where the taxpayer has filed for bankruptcy and the litigation occurs in the context of an IRS claim based on IRC § 6672.

In the context of § 6672 tax litigation, we find that the Debtor has correctly stated the burden of proof in this matter. Unfortunately, however, for the Debtor, while the evidence he offered rebutted the presumption of correctness afforded the IRS' proof of claim, the IRS successfully met its ultimate burden of proving that the Debtor was a responsible person and acted willfully in not paying the trust fund taxes.

*Liability under IRC § 6672.* IRC § 6672 imposes a penalty upon each responsible person who willfully fails to pay "trust fund" taxes[7]; it provides:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, ... or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of tax evaded, or not collected, or not accounted for and paid over...."

The question of the Debtor's liability under § 6672 presents two issues: first, whether the Debtor is a responsible person; and second, whether the Debtor's failure to collect or truthfully account and pay over such taxes was willful. *Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921, 927 (3d Cir.1990). The questions of responsibility and willfulness are factual ones. *Godfrey v. United States*, 748 F.2d 1568, 1575 (9th Cir.1984).

■ *Responsible Person.* A responsible person is a person[8] required to collect, truth-

---

6. It would be anomalous to have different burdens of proof depending on the identity of the objecting party.

7. Under the withholding system established by the IRC, employers have a duty to withhold both income and FICA (social security) taxes from their employees' wages. The withheld funds are commonly referred to as "trust funds" because the IRC provides that they are deemed to be "a special fund [held] in trust for the United States". IRC § 7501.

8. IRC § 6671(b) defines "person" as used in § 6672 as follows:

"The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs."

The definition of "persons" is not intended to mean only those persons specifically identified in § 6671(b). In fact, "by use of the word 'includes' the definition suggests a calculated indefiniteness with respect to the outer limits of the term". *Pacific National Insurance Company v. United States*, 422 F.2d 26, 30 (9th Cir.1970) (quoting *First National Bank in Plant City v.*

fully account for *or* pay over any tax. *Slodov v. United States*, 436 U.S. 238, 250, 98 S.Ct. 1778, 1787, 56 L.Ed.2d 251 (1978); *Quattrone*, 895 F.2d at 927. In *Slodov*, the petitioner argued that because the obligations in § 6672 are phrased in the conjunctive, a person can be a responsible person only if all three duties, *i.e.*, to collect, truthfully account for *and* pay over, are attributable to him. *Slodov*, 436 U.S. at 247, 98 S.Ct. at 1785. The Supreme Court rejected this argument finding that the petitioner's construction of § 6672, while not inconsistent with the language of the statute, was inconsistent with the statute's purpose of assuring payment of the withheld taxes. *Id.* at 247–48, 98 S.Ct. at 1785–86. If given the petitioner's construction, the penalties under § 6672 could easily be evaded by changes in the person's duties. *Id.* at 247, 98 S.Ct. at 1785. The Supreme Court concluded that the language in § 6672 was not meant to limit liability to only those persons responsible to perform all three enumerated duties but includes persons responsible to perform any of the three enumerated duties. *Id.* at 250, 98 S.Ct. at 1787.

■ There can be more than one responsible person for an employer. *Quattrone*, 895 F.2d at 926; *United States v. Vespe*, 868 F.2d 1328, 1332 (3d Cir.1989). The fact "[t]hat another person also may be liable under Section 6672 does not affect the liability of the person presently subject to suit." *Quattrone*, 895 F.2d at 926. Section 6672 imposes "joint and several liability on each responsible person, and each responsible person can be held for the total amount of the withholding not paid." *Id.* (citing *Sinder v. United States*, 655 F.2d 729, 732 (6th Cir.1981)). Even though the IRS will not collect more than 100% of the taxes owed, each responsible person is responsible for 100%. *Quattrone*, 895 F.2d at 926–27; *United States v. Elginton*, 90–1 USTC ¶ 50,322 at 84,126 (E.D.Pa.1990).

■ A significant body of case law has developed interpreting who is a responsible person under § 6672. The case law has fairly consistently held that the "responsible person" status is not determined solely by official title, but rather by the degree of connection to the corporation and the amount of control over certain corporate duties. *See, e.g., Nolfi v. United States*, 92–2 USTC ¶ 50,-511 at 85,777 (E.D.Pa.1992) (quoting *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976) ("[a] responsible person need not be an officer or director or shareholder or employee. It suffices that the person have significant control (not necessarily sole or final authority) over disbursement of the ... funds".))

The court in *Pacific National Insurance Company v. United States*, 422 F.2d 26, 30 (9th Cir.1970), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970) stated that the definition of persons in § 6671(b) "does not require that they be formally vested with the office or employed in the position normally charged with [the] function" of paying the taxes. Section 6672 "must be construed to include all those so connected with the corporation as to be responsible for performance of the act in respect of which the violation occurred." *Id.* (quoting *United States v. Graham*, 309 F.2d 210, 212 (9th Cir.1962)).

■ Responsibility under § 6672 is generally considered to be a "matter of status, duty and authority, not knowledge". *Quattrone*, 895 F.2d at 927; *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir.1979); *Elginton*, 90–1 USTC at 84,126. A person is responsible if he has significant, though not necessarily exclusive control over the employer's finances. *Quattrone*, 895 F.2d at 927; *Vespe*, 868 F.2d at 1332. Courts have determined that a person has significant control over the employer's finances "if he has the final or significant word over which bills or creditors get paid." *Id.*; *Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743, 757 (5th Cir.1982).

■ Courts have considered various factors in determining whether a person is a responsible person under § 6672. These factors include authority to write checks on behalf of the employer, *Quattrone*, 895 F.2d at 927; provision of financial advice to and securing financing for the employer, *id;*

*Dickinson,* 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969)).

The Debtor has not challenged his status as a "person" under § 6671(b).

preparation and filing of the employer's tax returns, *id.;* holding an office in the employer, *Brown v. United States,* 591 F.2d 1136, 1140 (5th Cir.1979); owning shares of the employer/corporation, *Green,* 89 B.R. at 475; involvement in hiring and firing of employees, *id.;* involvement in the day-to-day operations of the employer, *Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983); and possession of an entrepreneurial stake in the employer by reason of loans to business, *Green,* 89 B.R. at 475. *See generally Datlof v. United States,* 252 F.Supp. 11, 32–33 (E.D.Pa.1966); *Green,* 89 B.R. at 475 (citing *In re Clate,* 69 B.R. 506, 509 (Bankr.W.D.Pa. 1987)).

■ The presence of one of these factors alone or even a combination of several of these factors does not necessarily mean that the debtor is a responsible person under § 6672. For example, the case law is clear that a person is not a responsible person merely because that person is an officer of the employer. *See Godfrey,* 748 F.2d at 1575–76; *McCullough v. United States,* 462 F.2d 588, 590 (5th Cir.1972). Similarly, it has been held that the mere mechanical "duties of signing checks and preparing tax returns are not determinative of liability under § 6672." *Godfrey,* 748 F.2d at 1575; *Nolfi,* 92–2 USTC at 85,777. These enumerated factors, therefore, are merely examples of the types of "status, duty and authority", *Quattrone,* 895 F.2d at 927, which indicate that a person may be a responsible person under § 6672. The responsible person test is a test of substance not form. *Godfrey,* 748 F.2d at 1576.

■ Applying the statute as interpreted by the case law to the facts proven, we conclude that the IRS proved by a preponderance of the evidence that the Debtor was a responsible person of the Company under 26 U.S.C. § 6672 during the period in question. The Debtor was a fifty percent shareholder and secretary of the Company during the period in question. The Debtor had authority to sign checks on behalf of the Company with no co-signature required. The Debtor exercised that authority on several occasions. While the Debtor called his brother before writing checks, the purpose of such calls was to confirm that there were sufficient funds in the Company's account to cover the checks, not to seek approval. The Debtor with his brother made decisions regarding the hiring and firing of employees. The Debtor spoke with his brother regularly regarding the Company. The Debtor had an entrepreneurial stake in the Company and stood behind the Company's obligations by providing a guaranty of its obligations to its lender.

The Debtor argues that he did not know that during the period in question the payroll withholding taxes were not paid. Such knowledge is irrelevant to determining responsibility under § 6672. *In re Brady,* 110 B.R. 16, 19 (Bankr.D.Nev.1990). As stated earlier, "[r]esponsibility is a matter of one's status, duty, and authority, not knowledge." *Quattrone,* 895 F.2d at 927.

The Debtor also cannot avoid responsibility by claiming that although he could write checks on behalf of the Company, he only did so after consultation with his brother. Even assuming that the Debtor needed his brother's permission to write Company checks[9], it does not make the Debtor any less responsible under § 6672. The Debtor could sign Company checks without a co-signer and, therefore, had the authority or the "effective power" to pay the taxes, *i.e.,* the Debtor could have paid the payroll withholding taxes. The Fifth Circuit Court of Appeals concluded that the debtor in *Howard,* 711 F.2d at 734, a director, officer and shareholder of the corporation who had been ordered by the president not to pay withholding taxes, demonstrated the "effective power" to pay the taxes by the fact that he issued a small number of checks without the president's approval. *Id.* The court appreciated the fact that the debtor could have been fired if he paid the taxes in contravention of the president's orders but stated that it could not "condone the abdication of the responsibility imposed upon [the debtor] by law." *Id.*

The Debtor argues that the corporate power to pay taxes was given exclusively to his brother. The Debtor credibly testified that

---

9. David Abel testified that the Debtor called him before writing Company checks to verify the balance in the checking account. David Abel further testified, however, that the Debtor did not have to receive his authorization or permission before writing checks.

his brother handled the day-to-day business operations of the Company while he spent most of his time on the construction sites. The Debtor relies upon the holding in *Brady* to support his position that he is not a responsible person.

The facts in *Brady* are very similar to the facts before this Court. The debtor in *Brady* was a director, vice president and fifty percent shareholder of a corporation which failed to pay payroll withholding taxes.[10] From the beginning, the financial responsibilities were delegated to another individual and the debtor spent most of his time on the road conducting "road shows". *Id.* at 19. The debtor visited the company's office infrequently but had almost daily telephone contact with the company to check on inventory and report sales receipts. The court concluded that because the corporate duty to pay taxes was given exclusively to another individual at the company, the debtor was not a responsible person under § 6672. *Id.* When the responsible officer left the company and the debtor assumed control over the company's finances, the debtor became a responsible person under § 6672. *Id.* at 20.

We agree with *Brady* that while more than one person may be a responsible person under § 6672, more than one person is not required, *Brady*, 110 B.R. at 19, and recognize that division of corporate responsibility is usual in corporations and often necessary. *Bauer v. United States*, 543 F.2d 142, 149, 211 Ct.Cl. 276 (1976); *Brady*, 110 B.R. at 20. We also agree with *Brady* that "the controlling factor in determining who is a responsible person is who controls which creditors get paid and when." *Id.* The court in *Brady* specifically found that the debtor in that case did not have control over which creditors got paid. *Id.*

In the instant case, however, the Debtor had control over which creditors got paid. The Debtor paid some creditors on site and did not pay other creditors when the balance in the Company's account was insufficient. The fact that David Abel also had control over which creditors got paid is irrelevant. Further, assuming that the duty to collect the taxes belonged solely to David, the Debt-

or nonetheless had the status and authority, the effective power, to pay the taxes. The Debtor, therefore, had the duty to perform two of the three functions listed in § 6672 and was a responsible person thereunder during the period in question.

■ *Willfulness.* Having found that the Debtor was a responsible person during the period in question, we now must decide if the Debtor's failure to remit the taxes was willful. Generally, willfully within the meaning of § 6672 "means a voluntary, conscious and intentional decision to prefer other creditors over the Government." *Quattrone*, 895 F.2d at 928.

■ Willfulness can also be established by showing that the responsible person paid other creditors "with reckless disregard for whether taxes have been paid." *Vespe*, 868 F.2d at 1335 (citing *Sawyer v. United States*, 831 F.2d 755, 758 (7th Cir. 1987)). The Third Circuit Court of Appeals stated that

> "[t]his standard is satisfied if the taxpayer (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily."

*Vespe*, 868 F.2d at 1335 (quoting *Wright v. United States*, 809 F.2d 425, 427 (7th Cir. 1987)). A responsible person's "subsequent preference of other creditors to the government when he should have known of the past delinquency will subject him to liability." *Vespe*, 868 F.2d at 1335. *See* Collier on Bankruptcy, Vol. 1A, ¶ 22.02 at 22–16 (15th ed. 1993) ("[i]f a person acts or fails to act in the face of known facts or risks that would inform a reasonable business person that trust fund tax liabilities might not be paid, a finding of willfulness under [IRC] § 6672 will be appropriate"). With respect to this standard it is required that the responsible person act with reckless disregard; "[m]ere negligence in failing to ascertain facts regarding a tax delinquency is insufficient to constitute willfulness under [§ 6672]." *Bauer*, 543 F.2d at 150.

■ Willfulness must also be viewed in light of the Debtor's personal fault. "The

---

**10.** The debtor in *Brady*, similar to the Debtor in the case before the Court, never prepared or

supervised the preparation of the company's tax returns. *Brady*, 110 B.R. at 19.

fact that [§ 6672] imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence that it was not intended to impose liability without personal fault." *Slodov*, 436 U.S. at 254, 98 S.Ct. at 1788. The willfulness requirement requires a showing of personal fault but does not require a showing of a special intent to defraud the government or of evil motive. *Bond v. United States*, 90–2 USTC ¶ 50,551 at 85,863, 1990 WL 158470 (E.D.Pa.1990).

██ As stated earlier, after some initial confusion, the Debtor credibly testified that he first became aware in September, 1988 that the payroll withholding taxes were not paid. Shortly thereafter the Debtor resigned. The Debtor did not have actual knowledge during the period in question, June, 1987 through September, 1988, that the taxes were not paid. The Debtor's failure to pay the withholding taxes was not "willful" in the sense that he knowingly failed to pay the taxes.

We find that the Debtor's failure to pay the withholding taxes, however, was willful as the Debtor paid other creditors with reckless disregard for whether the taxes had been paid.[11] The Debtor testified that he knew that the Company at times had insufficient funds to pay creditors and that he would not write checks to pay creditors without consultation with his brother in order to determine whether there were sufficient funds in the Company's account for the checks to clear. Given the tenuous financial condition of the Company, of which the Debtor was aware, he "clearly ought to have known that there was a grave risk that withholding taxes were not being paid". *Vespe*, 868 F.2d at 1335. Further, the Debtor was in a position to easily

ascertain whether the taxes had been paid. David testified that the Debtor had complete access to the Company's books and records. The Debtor did not dispute this testimony. The Debtor presented no evidence that he took any steps to determine whether the taxes had been paid. *See id.*

Further, notwithstanding the fact that we are convinced that the Debtor did not act with an evil motive, we find the existence of personal fault on the part of the Debtor. The Debtor as a responsible person and knowing that the Company at times lacked sufficient funds to pay its creditors had the duty to ascertain whether the withholding taxes had been paid. The Debtor's failure to perform this duty constitutes "personal fault" sufficient to subject the Debtor to liability under § 6672. *See generally Wright*, 809 F.2d at 427 (the debtor, one of three principals of a small company, acted willfully under § 6672 where he knew that the company failed to pay withholding taxes in the past, knew the company was having continued financial difficulties and wrote company checks to creditors other than the government without making any effort to find out whether the government had been paid. The debtor in *Wright*, similar to the Debtor in the case before the Court, would have had no difficulty in finding out whether the taxes had been paid.)

██ Under the test enunciated by the Third Circuit in *Vespe*, 868 F.2d at 1335, the Debtor's failure to pay withholding taxes during the period in question was willful under § 6672. The Debtor resigned from the Company in September of 1988. The Debtor is not a responsible person under

**11.** In the Amended Joint Pre–Trial Statement, the Debtor argues that in the event that the Debtor is found to be a responsible person, the Debtor should not be liable for "pre-notice trust fund taxes, as there were insufficient funds to pay said taxes." However, the Debtor presented no testimony or other evidence at trial establishing that there were insufficient funds to pay withholding taxes. Had he done so, a finding of willfulness might have been avoided. Some courts have held that the failure to remit taxes under § 6672(a) is "not willful if the taxpayer can produce a 'reasonable cause' for this failure." *Howard v. United States*, 711 F.2d 729, 736 (5th Cir.1983) (quoting *Newsome v. United States*, 431 F.2d 742, 747 (5th Cir.1970)). *See United States v. Vespe*, 868 F.2d 1328, 1334 (3rd

Cir.1989) (citing *Caterino v. United States*, 794 F.2d 1 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987) (responsible person who did not learn of the unpaid taxes until after they were incurred and who did not show that the corporation lacked the funds to pay the taxes was liable under § 6672)). *But see Sorenson v. United States*, 521 F.2d 325, 328 (9th Cir.1975) (responsible person not excused from liability under § 6672 because there were no available funds to pay the taxes); *Bradford v. Egger (In re Egger)*, 35 B.R. 166 (Bankr.W.D.Va. 1983) (same). *See also Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970) (explicitly rejecting the reasonable cause exception).

§ 6672 for any tax liabilities accruing after his resignation in September of 1988.

Accordingly, we find that Debtor is a responsible person who acted willfully in failing to collect or account for and pay over withholding taxes of Joseph J. Abel & Sons, Inc. during the period ended June 30, 1987 through that date in September 1988 on which he tendered his resignation from the Company. Consistent with the foregoing Opinion, this Court will enter an Order allowing the IRS' proof of unsecured claim in the amount of $113,825.43 representing the unpaid Company taxes for the period in question. Since the record is not clear whether the amount of the proof of claim which covers the period ending September 30, 1988 includes any unpaid taxes for the brief period in September after Debtor's resignation, the Order will be without prejudice to Debtor to seek modification of the Order within ten (10) days of its entry to reduce the allowed claim by the amount of any unpaid taxes assessed against the Company for any period in September subsequent to Debtor's resignation.