**In re Guy PRIEST and Marlene Priest, Debtor.**

**Bankruptcy No. BK–S–94–20857–LBR.**

United States Bankruptcy Court,
D. Nevada.

Oct. 15, 1996.

Kathleen McDonald, Trustee, Las Vegas, NV.

W. Carl Hankla, Washington, DC, for I.R.S.

Thomas E. Crowe, Las Vegas, NV, for debtors.

## MEMORANDUM DECISION AND FINAL ORDER

GREGG ZIVE, Bankruptcy Judge.

This matter came on regularly for hearing before Gregg W. Zive, U.S. Bankruptcy Judge, upon an objection by Guy and Marlene Priest ("Priest") to the United States of America and Internal Revenue Service's ("IRS") proof of claim.

### Statement of the Case

This is a contested matter consisting of Priests' objection to the proof of claim filed by the IRS for tax penalties in the amount of $21,568.10. The penalties were assessed under 26 U.S.C. § 6651(a) for failure to timely file income tax returns for 1991 and failure to pay the tax due in 1991, and, under § 6654(a), for failure to timely pay estimated income tax for 1991. The tax liability arose from an early pension plan distribution which Priest received in connection with the sale of the Hawaii drywall business, Guy's Superior Interior, Inc. In order to determine Priest's tax liability for the assessed penalties, the Court must decide who has the burden of proof.

The Court, after reviewing and considering the pleadings, the oral and documentary evidence, the demeanor and credibility of the witnesses, argument of counsel and the parties written authorities, hereby makes its written findings of fact and conclusions of law as follows:

### Findings of Fact

1. Priest sold the Hawaii business, Guy's Superior Interior, Inc., in 1990.

2. Priest received the proceeds of the sale from the business in 1990 and reported capital gains of $579,219 on a joint 1990 Form 1040 individual income tax return.

3. Priest paid $179,858 in taxes for 1990.

4. In November 1990, Priest applied for final pension distribution in connection with the sale of their Hawaii business. Priest elected an early distribution of the interest in the Guy's Superior Interior, Inc. Retirement Plan ("Pension Plan").

5. Priest received a total distribution of $171,315 in 1991. Two checks made payable to Guy's Superior Interior, Inc., were endorsed to Guy Priest. A deposit of $157,-482.36 to the Priest bank account was made on February 25, 1991 (exhibit A). This deposit represents the first check. A check in the amount of $13,322.39 dated March 7, 1991 was made payable to Guy's Superior Interior, Inc. and endorsed by Guy Priest (exhibit B).

6. Priests' 1990 tax return was prepared by Alton Miyashiro, CPA, ("Miyashiro") of Nishihama and Kishida, CPA's, Inc., Honolulu, Hawaii. The 1990 return reported an overpayment of $8,736 to be applied toward the 1991 estimated tax.

7. The Priests did not receive advice from Miyashiro regarding the Pension Plan, the tax consequences of an early distribution or consult Miyashiro as to whether that income received from the 1991 distribution was included in the 1990 return. Guy Priest testified that he did not rely upon any advice from his accountant because he did not receive any advice.

8. In May or June of 1990, Priest moved from Hawaii to Las Vegas.

9. From April 1990 to May 7, 1991, there were no communications between Priest and Miyashiro.

10. On May 7, 1991, Miyashiro sent Priest a letter transmitting the 1990 federal and state income tax returns ("Miyashiro letter"). The Miyashiro letter stated:

"[w]e have also prepared 1991 Federal estimated vouchers based upon your estimate of income. Your estimated payments do not represent a 'safe estimate' and, therefore, you may be subject to an underpayment penalty ... [if] your 1991 tax liability exceeds the total of your quarterly payments.

We recommend that you consult with us if your tax situation changes in 1991 so we may revise your estimated payments.

We are aware of the distribution from the retirement plan of approximately $156,000. This distribution may also be subject to an additional 10% Federal tax." (Exhibit C).

11. The Miyashiro letter had a two-page form entitled "Instructions for Filing Attached Income Tax Returns" which was enclosed ("instructions"). The instructions stated that there was an overpayment of $11,327, of which $2,591 was applied to a 1990 estimated tax penalty and $8,736 was applied toward 1991 estimated taxes. The 1991 taxes were estimated to be $54,000 (exhibit E).

12. Guy Priest testified that his understanding of the language in the Miyashiro letter was that the $156,000 was prepaid in 1990, but that the Priests were to be penalized another 10%.

13. On or about May 10, 1991, the Priests signed their 1990 form 1040 return and mailed it to the IRS; this was subsequent to the receipt of the Pension Plan funds and the Miyashiro letter explaining the possibility an additional 10% imposition of federal income tax from the Pension Plan distribution.

14. Priests' 1991 return had to be filed on or before April 15, 1992. Priest and the IRS stipulated that Priest did not file a return on or before the due date and did not request an extension of time to file.

15. On or about April 12, 1993, the IRS sent Priest a notice regarding their failure to file a 1991 return. The IRS sent additional correspondence regarding this matter on or about June 7, 1993; July 19, 1993; and July 26, 1993 (exhibits G, H, I, J).

16. Priest filed the 1991 tax return on September 30, 1993 (exhibit M). The return reported a pension distribution of $171,315. The tax due was reported as $53,501 plus an estimated tax penalty of $2,581. Other than the $8,736 overpayment for 1990 credited to 1991 estimated taxes, Priest has not made any tax, interest or penalty payments on the 1991 taxes.

17. The 1991 tax was assessed on November 8, 1993, along with interest and penalties accrued to that date. Penalties of $11,457 were assessed pursuant to 26 U.S.C. § 6651 for failure to timely file a tax return for 1991; $7,541 was assessed pursuant to 26 U.S.C. § 6651 for failure to pay the tax due for 1991; $2,581 was assessed pursuant to 26 U.S.C. § 6654 for failure to pay estimated income tax for 1991.

18. The Debtors filed their Chapter 13 petition on March 4, 1994.

19. The IRS filed its proof of claim on April 20, 1994 (exhibit N).

20. In addition to the penalty, the proof of claim lists undisputed priority claims for 1991 income tax of $50,920 and interest thereon of $7,440.62.

21. To the extent any of the foregoing Findings of Fact should be considered to be conclusions of law, they should be construed as such.

### Conclusions of Law

■ Outside of a bankruptcy forum, the ultimate burden of proving the entitlement to a deduction lies with the taxpayer. *United States v. General Dynamics Corp.,* 481 U.S. 239, 245, 107 S.Ct. 1732, 1737, 95 L.Ed.2d 226 (1987) (quoting *Helvering v. Taylor,* 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935)). That is not true in a bankruptcy case.

■ In a bankruptcy case, a properly filed proof of claim is deemed allowed and constitutes prima facie evidence of the validity and amount of a claim. *In re Macfarlane,* 83 F.3d 1041, 1044 (9th Cir.1996); 11 U.S.C. §§ 501, 502(a). Thus, a proof of claim when filed in accordance with 11 U.S.C. § 501 is presumptively valid.

■ The burden of initially going forward with evidence rebutting the validity of a claim is on the objecting party. *In re Macfarlane, supra* at 1044. The objecting party must show facts which would tend "to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991).

■ If the objecting party meets this burden, "the creditor must present evidence to prove the claim." *In re Macfarlane, supra* at 1044. Thus, "the ultimate burden of proof is on the creditor" even if the creditor is the IRS. *In re Macfarlane, supra* at 1044–1045; *In re Brady,* 110 B.R. 16, 18 (Bankr.D.Nev.1990).

■ The IRS filed a proof of claim for penalties assessed against Priest under 26 U.S.C. § 6651(a) for failure to timely file an income tax return for 1991 and to pay the tax due in 1991; and pursuant to 26 U.S.C. § 6654(a) for failure to timely pay estimated income tax for 1991. The proof of claim constitutes prima facie evidence of the validity and amount of the claim. To rebut the validity of the claimed penalties, pursuant to

26 U.S.C. § 6651(a), Priest must present evidence which shows "that such failure is due to reasonable cause and not due to willful neglect" 26 U.S.C. § 6651(a) (1996). To demonstrate "reasonable cause," the taxpayer must show he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." *United States v. Boyle,* 469 U.S. 241, 243, 105 S.Ct. 687, 689, 83 L.Ed.2d 622 (1985) (citing Treas.Reg. § 301.6651–1(c)(1) (1984)); *See also Estate of Lang v. Commissioner,* 613 F.2d 770, 774 (9th Cir. 1980). The IRS has articulated eight reasons it considers to constitute "reasonable cause." If the cause asserted by the taxpayer fails to fall within one of these categories, the IRS will determine whether the asserted cause is reasonable. "A cause for delinquency which appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return and which clearly negatives willful neglect will be accepted as reasonable." *In re Boyle, supra* at 243 n. 1 (citing Internal Revenue Manual (CCH) § 4350, (24) ¶ 22.2(3) (March 20, 1980) (Audit Technique Manual for Estate Tax Examiners)).

In the objection to the proof of claim, Priest argued that reliance on Miyashiro when the 1990 return was filed was the basis for their belief that the income received from the Pension Plan was included in the 1990 tax return. However, Priest testified the tax consequences of the Pension Plan distribution were not discussed and no advice regarding the Pension Plan was received from Miyashiro. Priest cannot claim reliance as a basis for the failure to exercise ordinary business care and prudence. Instead, the Priests relied upon their own judgment in deciding not to timely file the 1991 return. Marlene Priest testified that she thought a 1991 return did not have to be filed because their income was below $10,000, as neither earned any wages and no rental income was received in 1991. Guy Priest testified about his lack of expertise regarding tax matters.

The Priests were advised of "the need to set aside something for the 1991 estimated payments" and about the 1991 estimated tax liability (exhibits E and F). Upon receipt of

the Miyashiro letter explaining the distribution from the Pension Plan may be subject to a ten percent federal tax, Guy Priest testified that he "assumed that the [tax on the] [$]156,000 was prepaid in 1990, but we were going to be penalized another ten percent." The advice and information contained in the Miyashiro letter is clear and sufficient to put a reasonably prudent person on notice of the likelihood of 1991 tax liabilities. Upon receiving this type of letter, a reasonably prudent person would have made inquiry and would have taken immediate action. It was not until the receipt of notices sent by the IRS in April–July, 1993, regarding the failure to file a 1991 return, that Priest took any affirmative measures. Priest contacted an accountant and filed the 1991 return on September 30, 1993.

Priest decided to cash out of the Pension Plan in November 1990. The proceeds from the Pension Plan were not received until February and March of 1991. The tax return was mailed on May 10, 1991 and was signed on or about that time. Priest assumed the distribution was taxed in 1990, even though the distribution was not received until 1991. It is not reasonable to conclude that the distribution was included in the 1990 tax return, as the distribution was not received until 1991 and the Miyashiro letter in 1991 makes reference to the distribution proceeds and the potential for tax liability.

 The evidence shows that Priest failed to produce sufficient evidence showing the exercise of ordinary business care and prudence with respect to 1991 tax liabilities. The term "willful neglect" is "read as meaning a conscious, intentional failure or reckless indifference." *In re Boyle, supra* at 245. The Priests willfully neglected to timely file and pay 1991 taxes.

To rebut the penalties assessed under 26 U.S.C. § 6654(a), Priest must produce evidence that shows the failure to make estimated tax payments falls within a statutory exception under 26 U.S.C. 6654(e). "[S]ection 6654 addition to tax is mandatory unless the petitioner can place himself within one of the computational exceptions provided for in subsection (d)." *Grosshandler v. Commissioner,* 75 T.C. 1, 20–21, 1980 WL 4621 (1980) (The statutory exceptions are now found in subsection (e)). Priest failed to produce any evidence to show that the failure to pay the estimated taxes falls within a statutory exception.

Priest has not "met its burden of overcoming the prima facie evidence of the proof of claim." *In re Brady, supra* at 18.

If Priest had met its burden the IRS would have had to prove its claim by a preponderance of the evidence. *In re Pugh,* 157 B.R. 898, 900 (9th Cir. BAP 1993). The IRS met its burden and proved Priest's failure to timely file and pay was not justified by a reasonable cause. Therefore, Priest is liable for the claimed penalties.

To the extent any of the foregoing Conclusions of Law should be considered to be findings of fact, they should be construed as such.

Pursuant to these Findings of Fact and Conclusions of Law, and good cause appearing therefor;

**IT IS ORDERED** that Priest's objection to the IRS's proof of claim is denied.